ESTATE OF HENRY K. SCHWARTZ, DECEASED, ROBERT SCHWARTZ, SUZANNE SCHWARTZ, AND MARK STEWART, ADMINISTRATORS, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 17918–82.     Filed December 17, 1984.

*David L. Kay*, for the petitioner.
*Richard Sapinski* and *Richard F. Flaherty*, for the respondent.

OPINION

SWIFT, *Judge*: In a statutory notice dated April 20, 1982, respondent determined a deficiency of $16,515.84 in the Federal estate tax liability of the Estate of Henry K. Schwartz.

---

The only issue for decision is whether the estate is entitled to a Federal estate tax credit for estate taxes paid to Spain with respect to certain bank deposits the decedent owned in branches of Spanish banks. That issue turns on whether the bank deposits are located within Spain under section 2014 of the Internal Revenue Code of 1954 as amended.[1]

This case was submitted fully stipulated pursuant to Rule 122, Tax Court Rules of Practice and Procedure. The stipulated facts are incorporated herein by this reference and are summarized below.

The decedent, Henry K. Schwartz, died intestate on May 3, 1978, in Madrid, Spain. Letters of administration were issued by the Surrogate's Court of Kings County, NY, to Suzanne Schwartz, Robert Schwartz, and Mark Stewart, each of whom is a child of decedent. Following the granting of an application for extension of time, a Federal estate tax return was timely filed on August 1, 1979.

Decedent was born on May 31, 1914, in Brooklyn, NY, and was therefore a U.S. citizen. On the date of death, decedent was a resident of Spain, where he had resided since September 19, 1969. Prior to his retirement in 1969, decedent had been a medical doctor in the United States. Decedent was not engaged in any trade or business in Spain throughout the time he resided in Spain.

On the date of death, decedent had the following sums on deposit in accounts with branches in Spain of Spanish commercial banks:

|  | Amount stated in Spanish ptas | Amount stated in U.S. dollars |
| --- | --- | --- |
| Banco Atlantico Madrid, Spain | 14.575.189,83 | $182,198 |
| Banco Coco Madrid, Spain | 5.093,87 | 64 |
| Total | 14.580.283,70 | 182,262 |

The deposits in the above bank accounts were not connected with any trade or business of the decedent in Spain.

On the date of death, decedent also owned a condominium apartment located in Madrid, Spain, and the furnishings

---

[1]Unless otherwise indicated, all section references are to the Internal Revenue Code of 1954 as amended and in effect during the year in issue.

therein. The fair market values of those properties on the date of decedent's death were as follows:

|  | Amount stated in Spanish ptas | Amount stated in U.S. dollars |
|---|---|---|
| Condominium apartment ............ | 1.047.049,00 | $13,088 |
| Furnishings .............................. | 400.000,00 | 5,000 |
| Total.............................. | 1.447.049,00 | 18,088 |

The bank deposits referred to above, the condominium apartment, and the furnishings therein were the subject of estate taxes imposed by the Government of Spain. The administrators of the estate paid those taxes on November 30, 1978, in the total amount of 1.971.116,00 Spanish ptas, representing US$27,516.78, at the exchange rate prevailing on the date of payment. That amount was reported on Form 906CE, and a foreign tax credit for the full amount of estate taxes paid to Spain was claimed by the estate. In the notice of deficiency, respondent disallowed the portion of the foreign estate tax credit that was claimed with respect to the bank deposits, based on his determination that the bank deposits were not situated in Spain within the meaning of section 2014.

Petitioner argues that the bank deposits were located within Spain in every practical and economic sense and that under the pertinent statutory provisions, the bank deposits must be treated as located within Spain for Federal estate tax purposes. To the extent the applicable Treasury regulations require an opposite result, petitioner argues that the regulations are unreasonable and invalid. Regardless of where the deposits were located from an economic standpoint, respondent argues that under the controlling statutory and regulatory provisions, decedent is deemed to have been a nonresident of Spain and decedent's bank deposits must be treated as if they were located outside of Spain. Respondent therefore concludes that petitioner is not entitled to a Federal estate tax credit for estate taxes paid to Spain with respect to those bank deposits. One court decision supports respondent's interpretation of the applicable law, namely, *Borne v. United States*, an unreported case (N.D. Ind. 1983, 52 AFTR 2d 83–6444, 83–2 USTC par. 13,536). For the reasons explained below, we agree with petitioner.

One is tempted to reach a conclusion herein simply on the basis of the realities of the location of the bank deposits in question—namely, the deposits were made in a *Spanish* branch of a *Spanish* bank by decedent, a *Spanish* resident; and respondent's argument that such property should be treated as located outside Spain could be rejected out of hand as nonsensical. However, a more judicious approach requires a detailed analysis of the applicable statutory and regulatory provisions. We will first discuss the relevant statutory provisions, followed by a discussion of the regulations and of the two decisions on which respondent relies.

With respect to estates of decedents who were either U.S. citizens or U.S. residents on the date of death, section 2014(a) (with certain limitations and subject to any treaty in effect between the United States and the foreign country[2]) allows a credit against Federal estate taxes due for foreign estate, inheritance, legacy, or succession taxes that are actually paid to any foreign country with respect to property that is both includable in the gross estate and situated within the foreign country.[3] Section 2014(a) requires a determination, among other things, of whether property is "situated within [the] foreign country." Thus, in this case, we must determine whether the decedent's bank deposits with Spanish banks are to be treated as being located within Spain on the date of decedent's death. It is not enough if the deposits are only to be treated as being located outside of the United States or in some foreign country. Under the statute, they must be treated as having been located within Spain on the date of death.

Subchapter A of chapter 11 of the Internal Revenue Code of 1954 as amended governs the estates of decedents who were either U.S. citizens or residents of the United States on the date of death. Subchapter B of chapter 11 of the Internal

---

[2]There was no death tax treaty in effect between the United States and Spain at any relevant time herein.

[3]The entire text of sec. 2014(a) provides as follows:

SEC. 2014. CREDIT FOR FOREIGN DEATH TAXES.

(a) IN GENERAL.—The tax imposed by section 2001 shall be credited with the amount of any estate, inheritance, legacy, or succession taxes actually paid to any foreign country in respect of any property situated within such foreign country and included in the gross estate (not including any such taxes paid with respect to the estate of a person other than the decedent). The determination of the country within which property is situated shall be made in accordance with the rules applicable under subchapter B (sec. 2101 and following) in determining whether property is situated within or without the United States.

Revenue Code of 1954 as amended governs the estates of decedents who were both nonresidents of the United States and not citizens of the United States. Decedent herein was not a U.S. resident, but he was a U.S. citizen on the date of death, and therefore he is governed by the provisions of subchapter A.

Thereunder, section 2014(a) addresses the question but provides no specific rules for the determination of the location of property of decedents who were either U.S. residents or U.S. citizens. Rather, section 2014(a) simply makes reference to and incorporates the rules applicable to decedents who were neither U.S. citizens nor U.S. residents (which rules are found in subchapter B of chapter 11 of the Internal Revenue Code of 1954 as amended—specifically in sections 2104 and 2105), and makes those rules applicable to a decedent who otherwise is governed by section 2014 (because of his status as either a U.S. citizen or a U.S. resident on the date of death).

The last sentence of section 2014(a) provides as follows:

The determination of the country within which property is situated shall be made in accordance with the rules applicable under subchapter B (sec. 2101 and following) in determining whether property is situated within or without the United States.

An appreciation of the precise words used and not used in the above-quoted statutory language is important. That language makes specific reference to and incorporates the "rules" of subchapter B, but does not state that the actual residence and citizenship of the particular decedent will be treated any differently than what they actually were on the date of death. In other words, the effect of the last sentence of section 2014(a), combined with the provisions of sections 2104 and 2105 of subchapter B, is that the determination of where property is located on the date of death for the estates of both U.S. residents or U.S. citizens, on the one hand, and nonresidents who also are not U.S. citizens, on the other, is to be based on the same general rules.

Accordingly, in the instant case, whether decedent's bank deposits are treated as having been located within Spain will be governed by the same rules that would be used to determine whether bank deposits would be treated as having been located within the United States under subchapter B. Those rules will

be applied to decedent's particular situation herein, taking into account his actual citizenship and residency status on the date of death (namely, U.S. citizenship but Spanish residency).

It is appropriate to apply the applicable rules of subchapter B to decedent's situation in accordance with our understanding of those rules, as explained above (and to do so before proceeding further to explain why we disagree with respondent's argument that section 2014(a), in addition to incorporating the general rules of subchapter B, also requires that decedent's actual residency in Spain be ignored). In order to apply the rules of subchapter B to decedent herein, who is otherwise governed by subchapter A, generally when the words "the United States" appear in the statutory and regulatory provisions, the word "Spain" must be substituted.

The first applicable section is 2104(c), which provides in relevant part as follows:

SEC. 2104. PROPERTY WITHIN [SPAIN].

(c) DEBT OBLIGATIONS.—For purposes of this subchapter, debt obligations of—

(1) a [Spanish] person, or

(2) [Spain], a State or any political subdivision thereof,

\*   \*   \*   \*   \*   \*   \*

owned and held by a nonresident not a citizen of [Spain] shall be deemed property within [Spain]. With respect to estates of decedents dying after December 31, 1969, deposits with a domestic [Spanish] branch of a foreign corporation, if such branch is engaged in the commercial banking business, shall for purposes of this subchapter, be deemed property within [Spain]. This subsection shall not apply to a debt obligation to which section 2105(b) applies or to a debt obligation of a domestic [Spanish] corporation if any interest on such obligation, were such interest received by the decedent at the time of his death, would be treated by reason of section 861(a)(1)(B), section 861(a)(1)(G), or section 861(a)(1)(H) as income from sources without [Spain].

The general rule reflected in section 2104(c) is that the location of debt obligations is governed by the location of the obligor, not by the location of the obligee. Therefore, under the general rule, obligations of a [Spanish] person or company are treated as property within [Spain]. The statutory language speaks in terms of debt obligations held by a "nonresident not a citizen of [Spain]" only because those statutory provisions (namely, the provisions of section 2104(c)) in their own right

only pertain to decedents who are neither citizens nor residents of [Spain]. It is obvious to us that when that rule is applied to *residents* of [Spain] (as the last sentence of section 2014(a) requires), the general rule must be the same—that is, the location of the obligor will control, and the location of debt obligations of [Spanish] persons and [Spanish] companies owed to [Spanish] residents will be considered to be within [Spain].

Any interpretation of the general rule of section 2104(c) other than that set forth in the prior paragraph, as it applies to U.S. citizens who are residents of Spain, would be absurd. Debt obligations of Spanish persons held by *nonresidents* of Spain would be treated as located *within* Spain, but such obligations held by *residents* of Spain would be treated as located *outside* Spain. Any such interpretation would also ignore the fact, previously explained, that the only reason the words "nonresident not a citizen" are used in section 2104 (and the associated sections 2101 through 2108 of subchapter B) is that those provisions in their own right only pertain to non-[Spanish] citizens who also are *not* residents of [Spain], and therefore there was no reason to refer expressly to "residents" of [Spain] in those sections.

Based on our analysis of the general rule of section 2104(c), as set forth above, when that rule is applied to a debt obligation of a Spanish obligor which is held by a U.S. citizen who also is a resident of Spain, the Spanish identity of the obligor requires that the debt obligation be treated as Spanish property. Only if one of the exceptions found in section 2104(c)(2) to the general rule is applicable, or if the provisions of section 2105 are applicable, will the property in question be treated as located without Spain.

The first exception to the general rule of section 2104(c) (that the identity of the obligor will control the location of the property) is found in the second sentence of section 2104(c)(2) and provides that with respect to estates of decedents dying after December 31, 1969, deposits with a [Spanish] branch of a non-[Spanish] commercial bank will be treated as located within [Spain] even though the obligor (namely, the parent bank) is a non-[Spanish] corporation. That exception is not applicable to the instant case because the deposits in question were made in a branch of a Spanish bank.

The second and third exceptions to the general rule of section 2104(c) are found in the third sentence of section 2104(c)(2) and provide that debt obligations to which section 2105(b)(1) or (2)[4] applies will be treated as located outside [Spain]. Section 2105(b)(1) applies to obligations that under section 861(c),[5] among other things, constitute deposits with a person carrying on a banking business and that under section 861(a)(1)(A)[6] would be treated as producing foreign (i.e., non-

---

[4]Sec. 2105(b) provides:

SEC. 2105(b). CERTAIN BANK DEPOSITS, ETC.—For purposes of this subchapter—
(1) amounts described in section 861(c) if any interest thereon, were such interest received by the decedent at the time of his death, would be treated by reason of section 861(a)(1)(A) as income from sources without [Spain], and
(2) deposits with a foreign branch of a domestic corporation or domestic partnership, if such branch is engaged in the commercial banking business,
shall not be deemed property within [Spain].

[5]Sec. 861(c) provides:

SEC. 861(c). INTEREST ON DEPOSITS, ETC.—For purposes of subsection (a)(1)(A), the amounts described in this subsection are—
(1) deposits with persons carrying on the banking business,
(2) deposits or withdrawable accounts with savings institutions chartered and supervised as savings and loan or similar associations under Federal or State law, but only to the extent that amounts paid or credited on such deposits or accounts are deductible under section 591 (determined without regard to section 265) in computing the taxable income of such institutions, and
(3) amounts held by an insurance company under an agreement to pay interest thereon.

[6]Sec. 861(a), in pertinent part, provides as follows:

(a) GROSS INCOME FROM SOURCES WITHIN [SPAIN].—The following items of gross income shall be treated as income from sources within [Spain]:
(1) INTEREST.—Interest from [Spain] or the District of Columbia, and interest on bonds, notes, or other interest-bearing obligations of residents, corporate or otherwise, not including—
(A) interest on amounts described in subsection (c) received by a nonresident alien individual or a foreign corporation, if such interest is not effectively connected with the conduct of a trade or business within [Spain].
(B) interest received from a resident alien individual or a domestic corporation, when it is shown to the satisfaction of the Secretary that less than 20 percent of the gross income from all sources of such individual or such corporation has been derived from sources within the [Spain], as determined under the provisions of this part, for the 3-year period ending with the close of the taxable year of such individual or such corporation preceding the payment of such interest, or for such part of such period as may be applicable.

*    *    *    *    *    *    *

(G) interest on a debt obligation which was part of an issue with respect to which an election has been made under subsection (c) of section 4912 (as in effect before July 1, 1974) and which, when issued (or treated as issued under subsection (c)(2) of such section), had a maturity not exceeding 15 years and, when issued, was purchased by one or more underwriters with a view to distribution through resale, but only with respect to interest attributable to periods after the date of such election, and
(H) interest on a debt obligation which was part of an issue which—
(i) was part of an issue outstanding on April 1, 1971,
(ii) was guaranteed by a [Spanish] person,
(iii) was treated under chapter 41 as a debt obligation of a foreign obligor,

[Spanish]) source interest income. Under sections 861(c) and 861(a)(1)(A), interest earned by a nonresident alien of [Spain] from deposit obligations of a Spanish commercial bank would be treated as non-[Spanish] source income if the interest therefrom is not effectively connected with the taxpayer's conduct of a trade or business in Spain. However, interest earned by a resident of Spain (such as decedent herein) would not qualify for that exception whether or not the interest is effectively connected with the taxpayer's conduct of a trade or business in Spain. Sec. 861(a)(1)(A).

Section 2105(b)(2) applies to bank deposits with a foreign branch of a [Spanish] bank if the foreign branch is engaged in the commercial banking business. Since the deposits herein were made in a Spanish branch of a Spanish bank, that exception is not applicable.

The fourth exception to the general rule of section 2104(c) is also found in the third sentence of section 2104(c)(2) and provides that debt obligations which produce foreign (i.e., non-[Spanish]) source interest income under section 861(a)(1)(B) will be treated as located outside [Spain]. Section 861(a)(1)(B)[7] applies to obligations where the obligor is a resident alien or domestic corporation of [Spain] and where less than 20 percent of the obligor's gross income from all sources for the prior 3 years was derived from sources within [Spain]. Since the bank deposits in question were the obligations of Spanish banks, there would appear to be no basis to apply that exception and respondent asserts none.

The fifth and sixth exceptions to the general rule of section 2104(c) are also found in the third sentence of section 2104(c)(2) and are based on technical characteristics of the particular debt obligations as described in section 861(a)(1)(G) and in section 861(a)(1)(H).[8] The bank deposits in question herein do not satisfy the descriptions set forth in section 861(a)(1)(G) or in section 861(a)(1)(H) and therefore those exceptions are not applicable.

---

(iv) as of June 30, 1974, had a maturity of not more than 15 years, and

(v) when issued, was purchased by one or more underwriters for the purpose of distribution through resale.

[7] For the text of sec. 861(a)(1)(B), see note 6 *supra*.

[8] For the texts of sec. 861(a)(1)(G) and sec. 861(a)(1)(H), see note 6 *supra*.

Section 2105 provides three rules for determining whether life insurance proceeds, bank deposits, and art works are to be treated as having been located outside [Spain]. The rules for life insurance proceeds (section 2105(a)) and art works (section 2105(c)) obviously are not applicable to this case. The rule for bank deposits (section 2105(b)) already was discussed in connection with the exceptions found in section 2104(c)(2), and we previously concluded that section 2105(b) did not require the bank deposits involved herein to be treated as property located outside Spain.

For the reasons set forth above, the bank deposits of decedent herein do not qualify for any of the exceptions of section 2104(c)(2), or section 2105, and, under the general rule of section 2104(c), the identities of the obligors (namely, the Spanish commercial banks) control the determination of the location of decedent's bank deposits for Federal estate tax purposes.

We will now address respondent's specific arguments. As previously mentioned, respondent argues that the cross-reference in section 2014(a) to subchapter B requires not only that the principles and rules of sections 2104 and 2105 apply, but also that the decedent's actual residence in Spain be ignored and that the decedent be treated as a nonresident of Spain. Respondent refers to certain language in section 20.2014–1(a)(3), Estate Tax Regs., and to two District Court decisions in support of his argument. We acknowledge that the pertinent language in the regulation is ambiguous, and we surmise that that ambiguity may well be responsible for the result reached in at least one of the District Court decisions. However, we are not bound by the District Court decision, and we are obliged to resolve any ambiguities in the regulations in a manner which is reasonable and consistent with the statutory scheme.

It is a fundamental principle of statutory construction that a common sense, rather than a literal, interpretation of words should be adopted where adoption of the literal interpretation would lead to an absurd result. 1 J. Mertens, Law of Federal Income Taxation, sec. 3.02, at 4 (1981). Furthermore, a "common sense interpretation is the safest rule to follow in the administration of income tax laws." (Citation omitted.) *Keeble v. Commissioner*, 2 T.C. 1249, 1252 (1943). It is also well

established that where administrative regulations are ambiguous, the rules of statutory construction will apply. 1A C. Sands, Statutes and Statutory Construction, sec. 31.06 (1972).

The ambiguous language in the regulations is found in the fourth sentence of section 20.2014–1(a)(3), Estate Tax Regs. For purposes of understanding that regulation, it is not necessary to substitute "Spain" for "the United States." The fourth sentence of the regulation provides as follows:

Whether or not particular property of a decedent is situated in the foreign country imposing the tax is determined in accordance with the same principles that would be applied in determining whether or not similar property of a non-resident decedent not a citizen of the United States is situated within the United States for Federal estate tax purposes.[9]

---

[9]The entire text of sec. 20.2014–1(a)(3), Estate Tax Regs., is set forth below:

Sec. 20.2014–1 Credit for foreign death taxes—(a) In general. * * *

*　　*　　*　　*　　*　　*　　*

(3) No credit is allowable under section 2014 in connection with property situated outside of the foreign country imposing the tax for which credit is claimed. However, such a credit may be allowable under certain death tax conventions. In the case of a tax imposed by a political subdivision of a foreign country, credit for the tax shall be allowed with respect to property having a situs in that foreign country, even though, under the principles described in this subparagraph, the property has a situs in a political subdivision different from the one imposing the tax. Whether or not particular property of a decedent is situated in the foreign country imposing the tax is determined in accordance with the same principles that would be applied in determining whether or not similar property of a nonresident decedent not a citizen of the United States is situated within the United States for Federal estate tax purposes. See secs. 20.2104–1 and 20.2105–1. For example, under sec. 20.2104–1 shares of stock are deemed to be situated in the United States only if issued by a domestic corporation. Thus, a share of corporate stock is regarded as situated in the foreign country imposing the tax only if the issuing corporation is incorporated in that country. Further, under sec. 20.2105–1 amounts receivable as insurance on the life of a nonresident not a citizen of the United States at the time of his death are not deemed situated in the United States. Therefore, in determining the credit under section 2014 in the case of a decedent who was a citizen or resident of the United States, amounts receivable as insurance on the life of the decedent and payable under a policy issued by a corporation incorporated in a foreign country are not deemed situated in such foreign country. In addition, under sec. 20.2105–1 in the case of an estate of a nonresident not a citizen of the United States who died on or after November 14, 1966, a debt obligation of a domestic corporation is not considered to be situated in the United States if any interest thereon would be treated under section 862(a)(1) as income from sources without the United States by reason of section 861(a)(1)(B) (relating to interest received from a domestic corporation less than 20 percent of whose gross income for a 3-year period was derived from sources within the United States). Accordingly, a debt obligation the primary obligor on which is a corporation incorporated in the foreign country imposing the tax is not considered to be situated in that country if, under circumstances corresponding to those described in sec. 20.2105–1 less than 20 percent of the gross income of the corporation for the 3-year period was derived from sources within that country. Further, under sec. 20.2104–1 in the case of an estate of a nonresident not a citizen of the United States who died before November 14, 1966, a bond for the payment of money is not situated within the United States unless it is physically located in the United States. Accordingly, in the case of the estate of a decedent dying before November 14, 1966, a bond is deemed situated in the foreign country imposing the tax only if it is physically located in that country. Finally, under sec. 20.2105–1 moneys deposited in the United States with any person

Respondent argues that the use in that regulation of the words "similar property *of a nonresident* decedent not a citizen of the United States" (emphasis added) requires that the actual residence of decedent herein in Spain be ignored and that decedent must be treated as a nonresident of Spain.

Respondent's interpretation of the regulation is supported by the example in the regulation pertaining to life insurance proceeds. That example provides that life insurance proceeds on the life of a decedent (such as the decedent involved herein) who was a citizen of the United States but not a resident of the United States are not deemed to be located within the foreign country in which the decedent was resident and in which the insurance company was located. That example makes no distinction between a decedent who was a U.S. citizen who resided in the foreign country in which the insurance company was located and a decedent who was a U.S. citizen but who resided in the United States. Thus, the example in section 20.2014–1(a)(3), Estate Tax Regs., pertaining to life insurance proceeds does support respondent's argument that once reference must be made, under section 2014(c), to the rules of sections 2104 and 2105, the decedent is to be treated as if he were a *nonresident* of the foreign country (e.g., Spain) on the date of death, regardless of decedent's actual residence. Because the location of insurance proceeds is not involved in this case, we need not rule on the validity of that portion of the regulation, and we decline to do so. Furthermore, we decline to consider the example in the regulation with respect to life insurance proceeds to be a valid precedent for resolving the question herein concerning bank deposits.

We think the statutory rule is clear, and we emphasize that the statutory language simply states that the "rules" of sections 2104 and 2105 shall be utilized in determining the country in which property is located. The statutory language does not use the additional words found in the regulation thereunder that create the ambiguity (namely, "similar property *of a nonresident decedent* not a citizen of the United

---

carrying on the banking business by or for a nonresident not a citizen of the United States who died before November 14, 1966, and who was not engaged in business in the United States at the time of death are not deemed situated in the United States. Therefore, an account with a foreign bank in the foreign country imposing the tax is not considered to be situated in that country under corresponding circumstances.

States"). (Emphasis added.) The statutory language thus avoids and clarifies the ambiguity found in the regulation, and thereby obviates the need to invalidate the regulation.

Certain additional language in the regulation also supports our interpretation. Following the example pertaining to insurance proceeds, two examples are provided involving debt obligations and bank deposits. See sec. 20.2014–1(a)(3), Estate Tax Regs. Both examples conclude with limiting language to the effect that the obligations and bank deposits only will be deemed *not* to have been located within the foreign country under "circumstances corresponding" to those involved in sections 2104 and 2105. Those sections, as previously explained, directly involve *only nonresidents* who are not citizens of the respective country. Thus, the fact in a particular case of residency in the foreign country (as distinguished from nonresidency) would cause the examples in the regulation not to correspond with the facts typically involved in sections 2104 and 2105, and therefore the results called for in the examples in the regulation (namely, the property would have been deemed to be located outside Spain) would not follow.

Under the particular circumstances of this case,[10] the principles of sections 2014, 2104, and 2105 require that the bank deposits be treated as located within Spain.

Respondent's reliance on *Borne v. United States*, an unreported case (N.D. Ind. 1983, 52 AFTR 2d 83–6444, 83–2 USTC par. 13,536), is on point but is unpersuasive. That opinion simply adopts respondent's argument without any analytical explanation. In fact, the ambiguous language contained in the regulation is referred to as if it were a part of the statutory language of section 2014. Under our interpretation of the statute, due to the decedent's residence in Canada in that case, the bank accounts involved in *Borne* should have been treated as being located in Canada.

Respondent also cites *Riccio v. United States*, also an unreported case (D. P.R. 1971, 21 AFTR 2d 71–6230, 71–2 USTC par. 12,801), as support for his position. That case involved taxes paid to Puerto Rico, bank deposits in U.S.

---

[10]We reiterate that the circumstances of this case do not correspond with the circumstances described in sec. 20.2014–1(a)(3), Estate Tax Regs., concerning debt obligations and bank accounts, nor with the typical situations involved in secs. 2104 and 2105, due to the residence of decedent herein within Spain on the date of death.

branches of U.S. banks, and insurance proceeds. As we stated with respect to the insurance example in section 20.2014–1(a)(3), Estate Tax Regs., insofar as *Riccio* involved insurance proceeds, that decision does not affect our decision herein with respect to the rules to be applied to bank deposits. Insofar as the *Riccio* decision involved bank deposits, the facts of that case are completely different from the facts involved herein. The bank deposits in *Riccio* were not made in branches of banks located within the particular foreign country (Puerto Rico), but rather were made in U.S. branches of U.S. banks. Based on those facts, the deposits correctly were held to be located outside Puerto Rico. The District Court in *Riccio* also appears to have incorrectly applied, to the bank deposits involved therein, the rules applicable to tangible personal property, rather than the more specific rules applicable to debt obligations (see sec. 2104(c)) and to bank deposits (see sec. 2105(b)).

Of interest herein, however, is the fact that the District Court opinion in *Riccio* rejected the taxpayer's efforts to apply verbatim a portion of the caption heading of subchapter B of chapter 11 (namely, the words "Not Citizens"), which would have required the taxpayer therein to have been treated as an alien of the United States even though he in fact was a citizen of the United States; but, at the same time, the District Court opinion in *Riccio* in effect adopted the Government's argument that the words "Nonresidents" in the caption heading of subchapter B of chapter 11 must be adopted verbatim, thereby treating the taxpayer as a nonresident, even though he was a resident of Puerto Rico.

It is our opinion that neither the word "Nonresidents," nor the words "Not citizens [of Spain]" that appear in the subchapter headings of sections 2104 and 2105 and in the statutory language itself should be applied verbatim to a decedent who is governed by subchapter A because of either his U.S. citizenship or his U.S. residence and who is subject only to the "rules" of subchapter B in the determination of where his property is located. As we have previously stated, in applying the rules of subchapter B, the decedent's actual citizenship and the location of his actual residence should be taken into account.

For the reasons set forth above, we find that the bank deposits which decedent owned in branches in Spain of Spanish banks were located within Spain for purposes of the Federal estate tax credit.

*Decision will be entered for the petitioner.*

Reviewed by the Court.

DAWSON, SIMPSON, STERRETT, CHABOT, PARKER, KÖRNER, SHIELDS, HAMBLEN, COHEN, CLAPP, and JACOBS, *JJ.*, agree with this opinion.

FAY and WILBUR, *JJ.*, concur in the result.

---

WHITAKER and GERBER, *JJ.*, did not participate in the consideration of this case.

NIMS, *J.*, concurring: The majority by implication invalidates section 20.2014–1(a)(3), Estate Tax Regs., insofar as it applies to the facts of this case. I would do so expressly. The regulation lays down the blanket rule that the situs of a nonresident U.S. citizen's property is to be determined by the obverse of "similar property of a non-resident decedent not a citizen of the United States." But the situs of some property, including bank deposits in a U.S. bank, is determined differently in the case of a *resident* decedent not a citizen of the United States. Since the regulation fails to take this distinction into account, it is invalid and we should clearly say so.

GOFFE and WRIGHT, *JJ.*, agree with this concurring opinion.