113 T.C. No. 9


UNITED STATES TAX COURT


SKLAR, GREENSTEIN & SCHEER, P.C., Petitioner v.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 11386-97.               Filed August 13, 1999.


P is a corporation which provides medical services
and is a sponsor of a qualified deferred compensation
plan (the plan). S, G, and E were petitioner's owners
and employees. The plan, S, G, and E opened securities
investment accounts with X. After sustaining
substantial losses in their accounts, the plan, S, G,
and E filed a complaint against X alleging breach of
fiduciary duty and other claims. P was not a claimant
in the litigation. The litigation spanned 4 years, and
P paid nearly 50 percent of the litigation costs
incurred because the four claimants lacked the funds.
R determined that sec. 1.404(a)-3(d), Income Tax Regs.,
controls the deduction in this case and that only
expenses incurred by an employer that are of a
recurring nature are deductible thereunder.

Held: P may deduct the portion of litigation
costs incurred in connection with the plan under sec.
162. Section 404 limits deductions for contributions
to a plan but does not preclude P from deducting its

payment of these plan expenses. See sec. 1.404(a)-3(d), Income Tax Regs. Held, further, accuracy-related penalty under sec. 6662(a) sustained.


Leonard Bailin, for petitioner.

Rose E. Gole, for respondent.


OPINION

LARO, Judge: The parties submitted this case to the Court without trial. See Rule 122. Petitioner petitioned the Court to redetermine respondent's determination of a deficiency in tax for 1993 of $118,964, and an accuracy-related penalty for negligence under section 6662(a) of $23,793.

After concessions of the parties, we decide the following issues:

1. Whether petitioner may deduct legal fees of $97,274 paid on behalf of its qualified pension plan and certain individuals. We hold it may to the extent discussed herein.

2. Whether petitioner is liable for the accuracy-related penalty for negligence under section 6662(a). We hold it is.

Unless otherwise noted, section references are to the Internal Revenue Code in effect for the year in issue. Rule references are to the Tax Court Rules of Practice and Procedure.

## Background

All facts are stipulated. The stipulated facts and exhibits submitted therewith are incorporated herein by this reference. Petitioner's principal place of business was in Woodmere, New York, when it petitioned the Court.

Petitioner is a professional corporation which provides medical services in the area of internal medicine. During 1993, Dr. Steven Greenstein (Greenstein) and Dr. Max Scheer (Scheer) were petitioner's sole shareholders, each owning 50 percent, and were employees and officers of petitioner. Dr. Leo Sklar (Sklar) practiced medicine as an employee and shareholder of petitioner until 1986, at which time he sold his interest and retired.

During 1993, petitioner had in effect and was the sponsor of a money purchase plan entitled the Sklar, Greenstein & Scheer Employee Retirement Plan and Trust (the plan), which plan had been in existence for several years. Greenstein and Scheer were the plan trustees during all relevant periods. During 1985, Gary Zahn (Zahn), a representative of Prudential-Bache Securities, Inc. (Prudential), approached Sklar, Greenstein, and Scheer about opening securities accounts with Prudential. Impressed with Zahn's perceived abilities, Sklar, Greenstein, and Scheer each opened several personal accounts with Prudential,[1] and they

---

[1]For example, Sklar, Greenstein, and Scheer, each opened individual retirement accounts and other higher risk funds, and
(continued...)

opened an account for the plan. From 1985 through 1990, the plan invested $192,614 in its account with Prudential, and Sklar, Greenstein, and Scheer invested collectively $1,323,154.[2]

By 1991, Sklar, Greenstein, Sheer, their respective spouses, and the plan (collectively referred to as the claimants) were dissatisfied with Zahn's account management and filed a complaint with the American Arbitration Association (the Prudential litigation). The complaint alleged that Prudential was liable to them for an array of actionable conduct, including that Prudential and Zahn recommended inappropriate investments, engaged in racketeering violations, committed breach of contract and breach of fiduciary duty, made unauthorized trades, and committed common-law fraud. Petitioner was not a claimant in the Prudential litigation.

The Prudential litigation spanned 4 years, 1991 through 1994, and the claimants incurred collectively $578,359 in attorney's fees and other costs (the litigation costs). During the pendency of the case, petitioner paid and deducted $269,078 of the $578,359 in litigation costs, $97,272 of which was paid

---

[1](...continued)
each titled his account either in his individual name, the name of his spouse, or in his name jointly with his spouse.

[2]This amount represents the sum of the individual amounts invested by Sklar, Greenstein, and Sheer, and deposited into their respective accounts.

and deducted during 1993.[3]   The remaining amounts were paid by the other claimants.

As relevant, the plan provided the following regarding payment of plan expenses:

> All reasonable costs, charges and expenses incurred by the Trustee in connection with the administration of the Fund and all reasonable costs, charges and expenses incurred by the Plan Administrator in connection with the administration of the Plan (including fees for legal services rendered to the Trustee or Plan Administrator) may be paid by the Employer, but if not paid by the Employer when due, shall be paid from the fund.

The plan provided that the trustees did not guarantee the trust fund against investment loss, and that the trustees would be indemnified by petitioner, as employer, for any liability to which they might be subjected while acting as trustees.

On August 31, 1993, Prudential and the claimants entered into a settlement agreement calling for a cash payment by Prudential of $2,302,324.58.  This amount was allocated among the claimants in accordance with a collection factor applicable to each claimant.[4]   The plan's collection factor was approximately 15 percent, and it received $347,588 of the settlement proceeds. The collection factors of Sklar, Greenstein, and Scheer totaled

---

[3]The total litigation costs incurred during 1993 were $239,714.

[4]The claimants' attorneys allocated the settlement proceeds in accordance with an assigned collection factor which purportedly reflected the strength of each claimant's case.

the remaining 85 percent, and Sklar, Greenstein, and Scheer received the balance of the settlement proceeds in accordance therewith.[5]

On its return for 1993, petitioner deducted the $97,274 in litigation costs paid.  Leonard Bailin (Bailin), a certified public accountant who prepared the return, was the accountant for all claimants in the Prudential litigation for many years including 1993.  Bailin was aware that some of the litigation costs were being paid by the petitioner because the other claimants lacked funds and was aware that petitioner paid $97,274 in 1993.  Bailin neither discussed with petitioner nor advised it regarding the propriety of petitioner's deducting litigation costs, and he merely assumed they were deductible to petitioner. Respondent determined that the litigation costs of $97,274 were not deductible to petitioner, or, in the alternative, that petitioner could only deduct the share allocable to the plan.

---

[5]The claimants' attorneys also allocated the balance of incurred but unpaid legal expenses to the claimants based upon their collection percentage and deducted this amount from their respective proceeds.

## Discussion

We decide for the first time whether section 1.404(a)-3(d), Income Tax Regs., restricts an employer/plan sponsor's right to deduct an expense related to a qualified pension plan when the expense is ordinary and necessary to the employer but not "recurring in nature". Petitioner argues the regulation does not restrict its right to deduct such a nonrecurring expense because the text provides explicitly for deduction of "any" expense that satisfies the "ordinary and necessary" test of section 162. Respondent argues the regulation is read more narrowly to permit deduction of only "administrative" expenses which are ordinary and necessary and recurring in nature. Respondent relies on Rev. Rul. 86-142, 1986-2 C.B. 60, to support this position. This ruling, as discussed in detail below, concludes nonrecurring expenses paid by an employer are not deductible under this regulation. We disagree.

Our analysis starts at section 162(a), which provides generally: "There shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business".[6] However, if contributions otherwise deductible under section 162 are made by

---

[6]Respondent does not make an issue of whether petitioner "incurred" the expenses but rather argues only that the "ordinary and necessary" element is not met due to the nonrecurring character of the expenses.

an employer to a deferred compensation plan, section 404 applies

and preempts the deductibility of such contributions under any

other section.[7]  Section 404(a) provides:

> If contributions are paid by an employer to or under a
> stock bonus, pension, profit-sharing, or annuity plan,
> or if compensation is paid or accrued on account of any
> employee under a plan deferring the receipt of such
> compensation, such contributions or compensation shall
> not be deductible under this chapter; but, if they
> would otherwise be deductible, they shall be deductible
> under this section, subject, however, to the following
> limitations as to the amounts deductible in any year *
> * *

As applicable, section 404(a)(1)(A) places generally the

deductible limit on contributions at the amount necessary to

satisfy the full funding standard provided by section 412(a).

The pre-emptive nature of section 404 as to plan contributions is

further clarified by section 1.162-10(a), Income Tax Regs., which

provides that no deduction is allowed under section 162 if the

amounts are used to provide benefits under a deferred

compensation plan.

---

[7]The predecessor to sec. 404 first appeared in the Code as sec. 23(p) of the Revenue Act of 1928, ch. 852, 45 Stat. 791, 799-802.  Before adoption of the Revenue Act of 1942, ch. 619, 56 Stat. 798, contributions made to employees' deferred compensation funds could be deducted either as "ordinary and necessary" business expenses under sec. 23(a) (the predecessor to sec. 162), or under the specific provisions for such deductions under sec. 23(p).  See sec. 23(p) (1939); Tavannes Watch Co. v. Commissioner, 176 F.2d 211 (2d Cir. 1949), revg. 10 T.C. 544 (1948).  The Revenue Act of 1942 amended sec. 23(p), making it the exclusive section under which deductions for contributions to deferred compensation plans could be claimed.  See ch. 619, 56 Stat. 798, 863.

Section 404 supplanted other code sections with respect to deductions for contributions to a deferred compensation plan. As such, we initially address whether the payment of litigation costs on behalf of the plan was a contribution under section 404. Pertinent to this inquiry is section 1.404(a)-3(d), Income Tax Regs., which provides:

> Any expenses incurred by the employer in connection with the plan, such as trustee's and actuary's fees, which are not provided for by contributions under the plan are deductible by the employer under section 162 (relating to trade or business expenses), or 212 (relating to expenses for production of income) to the extent that they are ordinary and necessary.[8]

Neither the statute nor the regulations define the term "contribution". On brief, respondent proffers the following definition:

> [contribution is] defined as an amount paid by an employer into a pension trust to provide for the payment of benefits under the plan and to provide for ordinary and necessary administrative expenses incurred by the plan to the extent that those expenses are paid from the trust fund. If the ordinary and necessary administrative expenses incurred by the plan are paid directly by the employer rather than from the trust fund, these amounts are not considered to be contributions and, hence are not subject to the limits of I.R.C. § 404.

We agree with respondent's definition. The purpose of section 1.404(a)-3(d), Income Tax Regs., as we read it, is to clarify that, if an employer pays ordinary and necessary plan-related

---

[8]This regulation was adopted in 1956 after Congress' overhaul of the Code in 1954 and has remained unchanged since then. See T.D. 6203, 1956-2 C.B. 218, 219-278.

expenses directly to a third party from the employer's assets, and if such expenses are not provided for by contributions under the plan, those payments will not be deemed constructive contributions to the plan subject to section 404 limitations but rather are expenses deductible under section 162. This interpretation is in harmony with the statute, the purpose of which is to limit deductions for contributions. This interpretation is supported by respondent's suggested definition of "contribution" and by respondent's proffered rationale behind the regulation:

> The intention of Treas. Reg. § 1.404(a)-3(d) was to provide employers with two alternative ways of meeting the ordinary and necessary expenses of administering pension plans for their employees. The employer can either pay these costs to the plan trustee in the form of additional plan contributions, and leave to the plan trustee the responsibility for paying the incurred expenses, or the employer may pay these expenses out of general assets of the employer and deduct them under I.R.C. § 162 to the extent they are ordinary and necessary.

Payments by an employer to a third party for ordinary and necessary plan expenses fall outside the definition of "contribution" only if the expenses are "not provided for by contributions under the plan".[9] See sec. 1.404(a)-3(d), Income

---

[9]This makes sense, for example, in the case of a defined benefit plan where plan expenses provided for by the plan are variables accounted for in the actuarial process. See sec. 1.404(a)-3(b), Income Tax Regs; Perdue, Qualified Pension and Profit-Sharing Plan par. 13.06 (2d ed. 1998). In such cases where the allowed contribution is increased to account for

(continued...)

Tax Regs.  In this case, the plan provides the employer the option of paying expenses, but does not mandate payment by the employer.  Respondent concedes that this elective language means the expenses were not provided for by contributions under the plan.[10]  Thus, payment of the litigation costs is not treated as an actual or constructive contribution to the plan subject to section 404, and the allowance of the deduction is governed instead by section 162, to the extent the costs are ordinary and necessary expenses incurred by petitioner in connection with the plan.

Section 162 allows for a deduction if the expense was:  (1) Ordinary and necessary; (2) paid or incurred during the taxable year; (3) in carrying on the taxpayer's trade or business.  See sec. 162(a); Welch v. Helvering, 290 U.S. 111 (1933).  Ordinary is determined by time, place, and circumstance.  The kind of transaction out of which the obligation arose and its normalcy in

---

[9](...continued)
expenses, if the employer then pays the expenses directly a deduction could be a "double dip".

[10]Respondent maintains:

Since the expenses at issue were paid directly by the employer, they are "not provided for by contributions under the plan" within the meaning of Treas. Reg. sec. 1.404(a)-3(d).  As a result, the issue in this case is whether the expense for the Prudential litigation was an ordinary and necessary expense for the Retirement Plan and therefore deductible under I.R.C. § 162.

the particular business are controlling.  See <u>Deputy v. DuPont</u>, 308 U.S. 488, 496 (1940).  Necessary connotes a sense that the expense is appropriate and helpful, rather than absolutely essential.  See <u>Welch v. Helvering</u>, <u>supra</u> at 113.  Petitioner maintained the plan as compensation for its employees, and the plan lost money due to Prudential's alleged misconduct.  We are convinced petitioner's funding of the litigation costs, to the extent allocable to the plan, was both ordinary and necessary to petitioner's trade or business.  Petitioner has satisfied the section 162 requirements as to the portion of litigation costs allocable to the plan set forth below.

Respondent argues erroneously that section 1.404(a)-3(d), Income Tax Regs., allows deduction only of expenses that are of a "recurring nature" related to "administration" of the plan.  Citing Rev. Rul. 86-142, 1986-2 C.B. 60, respondent argues the litigation costs are "non-recurring expenses" and therefore, not deductible.  In that revenue ruling, the issue was whether the employer could deduct amounts paid into a pension trust by an employer to reimburse the trustee for broker's fees paid by the trust.  In holding the broker's fees were not deductible, the Commissioner reasoned:  "Brokers commissions are not recurring administrative or overhead expenses, such as trustee or actuary fees, incurred in connection with the maintenance of the trust or plan."  See Rev. Rul. 86-142, 1986-2 C.B. 61.

Respondent misconstrues the regulation. To restate, section 1.404(a)-3(d), Income Tax Regs., is a clarification of whether and in what circumstances payment by an employer of plan expenses is a "contribution", the deduction of which is limited by section 404. It further clarifies that section 162 governs the deduction of any payments falling outside the reach of section 404. In the circumstances described in section 1.404(a)-3(d), Income Tax Regs., section 404 does not limit or restrict expenses that are otherwise deductible under section 162. There is no requirement under section 162 that the expense be "recurring in nature" or related solely to administration, and, in fact, a payment may be a one-time occurrence and still be ordinary and necessary. See Commissioner v. Heininger, 320 U.S. 467 (1943); Welch v. Helvering, supra at 114.

To the extent respondent relies on Rev. Rul. 86-142, 1986-2 C.B. 60, we disagree with the reasoning therein and decline to adopt that reasoning.[11] See Stark v. Commissioner, 86 T.C. 243 (1986) (revenue ruling is not binding on this Court). Respondent does not argue the regulation is ambiguous or that any particular

---

[11]Notwithstanding our holding herein, we do not believe the result reached in Rev. Rul. 86-142, 1986-2 C.B. 60, would change because broker's commissions incurred in connection with the acquisition of securities must be capitalized. See Helvering v. Winmill, 305 U.S. 79 (1938); sec. 1.263(a)-2(e), Income Tax Regs. Respondent has not raised the issue of whether the litigation costs at issue here were capital expenses, and we express no opinion in this regard.

canon of construction should be applied.[12]  See <u>Estate of
Schwartz v. Commissioner</u>, 83 T.C. 943 (1984) (where
administrative regulations are ambiguous the rules of statutory
construction will apply); see also 1A Sands, Statutes and
Statutory Construction, sec. 31.06 (1872).  In any case, we need
only resort to one cardinal canon here as the regulation clearly
and unambiguously provides "any expenses" incurred by an employer
in connection with a plan are deductible under section 162 as
long as they are ordinary and necessary and are "not provided
for" by contributions under the plan.  We presume that the
Treasury, the drafter of the regulation, said what it means and
means what it said.  See <u>Connecticut Natl. Bank v. Germain</u>, 503
U.S. 249 (1992) (for a discussion of the cardinal canon).  We do
not read the phrase "such as trustee's and actuary's fees" as
restricting the breadth of "any expenses" but rather as being
illustrative in nature.[13]

Having decided petitioner may deduct the litigation costs
allocable to the plan, we decide which portion is so allocable.
Petitioner paid $97,274 in litigation costs in connection with a
case involving four separate claimants; to wit, Sklar,

---

[12]For example, respondent does not argue the doctrine of
ejusdem generis to support his position that only expenses of the
same type as "trustee's and actuary's fees" may be deducted.

[13]The term "such as" is defined as "for example".  See
Webster's II New Riverside University Dictionary 1157 (1984).

Greenstein, Scheer, and the plan.  The claims of Sklar, Greenstein, and Scheer accounted for 85 percent of the recovery in this case, and a portion of the legal expenses incurred in 1993 was allocable to their claims.  To the extent petitioner paid any portion of the litigation costs allocable to Sklar, Greenstein, or Scheer, petitioner paid the expenses of other taxpayers, and such expenses were not incurred in connection with the plan.  Petitioner paid its own expenses only to the extent that the litigation costs were allocable to the plan.  See George R. Holswade, M.D., P.C.  v. Commissioner, 82 T.C. 686, 699-701 (1984) (rejecting respondent's claim that an employer's payment of a plan-related expense was the payment of another's expense).

The claimants allocated the settlement proceeds and remaining unpaid legal fees in accordance with a collection factor.  Neither party has suggested that this allocation was disproportionate or improper, and we find the allocation percentages reasonable.  Of the $239,717 in litigation costs incurred in 1993, 15 percent (the plan's collection factor) or $35,957 is allocable to petitioner, and the remaining $203,760 is allocable to Sklar, Greenstein, and Scheer.  We hold petitioner may deduct the $35,957 allocable to the plan.

The remaining $61,317 in litigation costs paid ($97,274-$35,957) is allocable to Sklar, Greenstein, and Scheer.  This stipulated record contains no evidence from which we can find

that petitioner's payment of litigation costs related to these individuals was ordinary and necessary to petitioner's business or was made by petitioner in connection with the plan. To the contrary, the only evidence regarding petitioner's motive for paying the litigation costs is that all claimants lacked the necessary funds. This motive was not proximately related to the plan or to petitioner's trade or business, and the expense was neither ordinary nor necessary. We sustain respondent's determination to the extent of $61,317.

Respondent determined petitioner is liable for the accuracy-related penalty under section 6662(a) and (b)(1) for the year in issue. That section imposes a penalty equal to 20 percent of the portion of an underpayment that is attributable to, among other things, negligence. Petitioner will avoid this penalty if the record shows that it was not negligent; i.e., it made a reasonable attempt to comply with the provisions of the Internal Revenue Code, and it was not careless, reckless, or in intentional disregard of rules or regulations. See sec. 6662(c); Accardo v. Commissioner, 942 F.2d 444, 452 (7th Cir. 1991), affg. 94 T.C. 96 (1990); Drum v. Commissioner, T.C. Memo. 1994-433, affd. without published opinion 61 F.3d 910 (9th Cir. 1995). Negligence connotes a lack of due care or a failure to do what a reasonable and prudent person would do under the circumstances. See Allen v. Commissioner, 92 T.C. 1 (1989), affd. 925 F.2d 348

(9th Cir. 1991); <u>Neely v. Commissioner</u>, 85 T.C. 934, 947 (1985). The accuracy-related penalty of section 6662 is not applicable to any portion of an underpayment to the extent that an individual has reasonable cause for that portion and acts in good faith with respect thereto. See sec. 6664(c)(1). Such a determination is made by taking into account all facts and circumstances, including whether the taxpayer relied on a professional tax adviser. See sec. 1.6664-4(b)(1), Income Tax Regs. Reliance on the advice of a tax professional is a defense to the accuracy-related penalty when the taxpayer establishes: (1) The adviser had sufficient expertise to justify reliance, (2) the taxpayer provided necessary and accurate information to the adviser, and (3) the taxpayer actually relied in good faith on the adviser's judgment. See <u>Ellwest Stereo Theatres of Memphis, Inc. v. Commissioner</u>, T.C. Memo. 1995-610.

On this stipulated record, we conclude petitioner is liable for the accuracy related penalty. Petitioner conceded several items in the notice of deficiency, and, as to the conceded items, there is no evidence that reasonable cause existed or that petitioner was not negligent. As to the deduction for the litigation costs attributable to the individual claimants, no reasonable cause existed and there is no evidence petitioner was not negligent. While the parties stipulated "Mr. Bailin's clients relied upon him to properly prepare their returns," the

parties also stipulated Bailin and petitioner never discussed the issue and that they "assumed" the litigation costs were deductible. On this record, we conclude the elements for reasonable reliance on a tax adviser are not satisfied. We hold petitioner is liable for the penalty for negligence on the entire deficiency resulting from the Rule 155 computation.

In reaching our holdings herein, we have considered each argument made by the parties, and, to the extent not discussed above, find those arguments to be irrelevant or without merit. To reflect the foregoing,

<u>Decision will be entered</u>

<u>under Rule 155.</u>