T.C. Summary Opinion 2011-94


UNITED STATES TAX COURT


DAVID H. ZATZ AND JOAN CASSIDY O'HOLLAND, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 12618-10S.                    Filed July 19, 2011.


<u>Pattie S. Christensen</u>, for petitioners.

<u>Richard W. Kennedy</u>, for respondent.


SWIFT, <u>Judge</u>:  This case was heard pursuant to the
provisions of section 7463 of the Internal Revenue Code in effect
when the petition was filed.[1]  Pursuant to section 7463(b), the

---

[1]All section references are to the Internal Revenue Code in
effect for the years in issue, and all Rule references are to the
Tax Court Rules of Practice and Procedure.

decision to be entered is not reviewable by any other court, and this opinion shall not be treated as precedent for any other case.

Respondent proposed deficiencies and penalties with respect to petitioners' 2000, 2001, 2002, and 2003 Federal income taxes as follows:

| Year | Deficiency | Penalty Sec. 6662(a) |
|------|------------|----------------------|
| 2000 | $6,785 | $1,357 |
| 2001 | 66,079 | 13,216 |
| 2002 | 62,172 | 12,434 |
| 2003 | 26,801 | 5,360 |

Petitioners conceded that the proposed tax deficiencies were correct and paid the proposed deficiencies before the issuance of the notice of deficiency.  The only issue before us is whether petitioners are liable for the section 6662(a) accuracy-related penalties due to negligence or substantial understatement of income tax.

## Background

This case has been fully stipulated under Rule 122, and the stipulated facts are so found.

At the time of filing the petition, petitioners resided in Utah.

David H. Zatz (petitioner) owned 100 percent of Crossways Corp. (Crossways), a lucrative Utah corporation engaged in the business of managing condominiums.  Before the establishment of

the various other entities described below, Crossways paid petitioner a substantial salary for his personal services, apparently as president and chief executive officer.[2]

In 2000 petitioner contacted a number of financial planners to obtain tax advice. For a fee of $30,000 petitioner hired Hewlett Brothers Financial (HBF), a Utah financial advisory firm owned by John Hewlett.

HBF presented to petitioner a plan to reduce his Federal income and employment taxes and Utah State income taxes under which his salary each year from Crossways would be reported not just by him; rather, his salary would be divided and reported in part by him and in part by other entities that would be formed and effectively controlled by him (the plan).

Also, under the plan petitioner (and possibly his wife) would transfer to the other entities (to be set up and controlled by him) ownership of a number of personal assets (e.g., home, cars, airplane, and sailboats), and expenses relating to these assets would be deducted as business expenses.

Larry Cox (Cox), a Utah licensed certified public accountant (C.P.A.), and Miles Lignell (Lignell), a Utah attorney, both apparent employees of HBF and not working independently of HBF, prepared certain financial, legal, and tax documents for the

---

[2]The record does not reflect petitioner's exact title and responsibilities with Crossways.

entities that petitioner would form.  At some point petitioner questioned Cox and Lignell about the legitimacy of the purported tax benefits of the plan.  Cox and Lignell "assured" petitioner that the plan was within the law.

In its promotional materials or presentations to petitioner HBF also represented that the strategy proposed in the plan had been reviewed with approval by "prominent and prestigious accounting and law firms" and that the Internal Revenue Service (IRS) "blesses" the HBF "process".

No copy of any independent accounting or legal opinion relating to the plan was offered into evidence.  HBF's representation that the IRS blesses the HBF strategy was false.

Although petitioner interviewed other financial advisers before formally engaging HBF,[3] petitioners relied solely upon the advice of Cox and Lignell in deciding to implement the plan.

In 2000 petitioner adopted HBF's plan and formed the related entities, and nominal ownership of a number of petitioners' personal assets apparently was transferred to the related entities.

In 2000, 2001, 2002, and 2003, relating to and in compensation for petitioner's personal services for Crossways, Crossways paid salaries or commissions of $156,667, $439,099,

---

[3]The record does not disclose the names of any other financial, tax, or other professionals from whom petitioners sought advice, nor what advice, if any, was received.

$469,999, and $417,500, respectively.  As explained, under the HBF plan the above amounts were split among petitioner and the related entities, reported accordingly, and offset by large personal expenses of petitioner's that were claimed as business expenses of the related entities.

Of the total above salary or commission amounts Crossways paid with respect to petitioner's services in 2000, 2001, 2002, and 2003, approximately 33, 78, 75, and 70 percent, respectively, were offset by the claimed expenses.

To prepare their 2000, 2001, 2002, and 2003 Federal income tax returns, petitioners hired FPG Business Services (FPG), an independent accounting firm unrelated to HBF.  Apparently, petitioners relied on HBF to provide FPG with the financial data required to file petitioners' Federal income tax returns, and FPG prepared petitioners' tax returns on the basis of information HBF provided.

Petitioners discussed the tax returns with FPG and were told that the returns accurately reflected the financial data that HBF had provided.  Petitioners did not seek advice from FPG as to the legitimacy of the plan under Federal tax law.

On audit respondent recast the salaries or commissions paid by Crossways with respect to petitioner's services as income received solely by petitioner, disallowed the business expense deductions claimed by the various entities that had been formed,

reallocated legitimate deductions to petitioners' individual tax returns, and proposed the tax deficiencies and section 6662(a) accuracy-related penalties set forth above.

Before the issuance of a notice of deficiency, petitioners agreed with and paid the tax deficiencies. The only matter in dispute is respondent's determination of the section 6662(a) accuracy-related penalties.

### Discussion

Section 6662(a) authorizes respondent to impose a 20-percent penalty for negligence or substantial understatement of income tax. Sec. 6662(b)(1) and (2). For the purposes of section 6662, negligence is defined as the failure to exercise the due care of a reasonable and ordinarily prudent person under like circumstances. Neely v. Commissioner, 85 T.C. 934, 947 (1985). A substantial understatement of income tax is defined as an understatement of tax that exceeds the greater of 10 percent of the tax required to be shown on the return or $5,000. Sec. 6662(d)(1)(A).

Petitioners agree with the tax deficiencies for 2000 through 2003. Accordingly, respondent has met his burden of production, and the burden of proof is on petitioners to show that the section 6662(a) accuracy-related penalty does not apply for any year. See sec. 7491(c); Higbee v. Commissioner, 116 T.C. 438, 446-447 (2001).

Section 6664(c)(1) provides a defense to the section 6662(a) accuracy-related penalty where the taxpayer establishes that there was reasonable cause for a portion of an underpayment and that the taxpayer acted in good faith with respect to such portion. The determination of whether a taxpayer acted with reasonable cause and in good faith is made on a case-by-case basis, taking into account all the facts and circumstances, including the taxpayer's efforts to assess his proper tax liability, the knowledge and experience of the taxpayer, and reliance on the advice of a tax professional. Sec. 1.6664-4(b)(1), Income Tax Regs.

Reasonable cause may be established where a taxpayer relies on the advice of a competent tax adviser even where the advice was wrong. See Hatfried, Inc. v. Commissioner, 162 F.2d 628, 635 (3d Cir. 1947), affg. in part and revg. in part a Memorandum Opinion of this Court; Girard Inv. Co. v. Commissioner, 122 F.2d 843, 848 (3d Cir. 1941). However, the adviser must be a competent professional with sufficient expertise to justify the taxpayer's reliance, the taxpayer must have provided necessary and accurate information to the adviser, and the taxpayer must have actually relied in good faith on the adviser. Neonatology Associates, P.A. v. Commissioner, 115 T.C. 43, 99 (2000), affd. 299 F.3d 221 (3d Cir. 2002); Sklar, Greenstein & Scheer, P.C. v. Commissioner, 113 T.C. 135, 144-145 (1999).

Petitioner claims that his reliance on C.P.A. Cox and Attorney Lignell was in good faith and should establish reasonable cause.

We look first to determine whether Cox and Lignell had sufficient expertise to justify petitioner's reliance. Petitioner emphasizes that both Cox and Lignell were licensed in their fields. Being licensed as an accountant or attorney, however, is only a minimum requirement to practice as an attorney or accountant and by itself does not establish expertise in tax law.

Relying on assurances of professionals may demonstrate good faith, but only when the professionals are acting independently from the entity promoting the claimed benefits. Van Scoten v. Commissioner, 439 F.3d 1243, 1253 (10th Cir. 2006), affg. T.C. Memo. 2004-275; Mortensen v. Commissioner, 440 F.3d 375, 387 (6th Cir. 2006), affg. T.C. Memo. 2004-279; Rybak v. Commissioner, 91 T.C. 524, 565 (1988). The evidence does not indicate that Cox and Lignell were providing advice to petitioner independently of HBF. See Mortensen v. Commissioner, supra at 387. Advice from otherwise qualified professionals with an interest in the transaction "is better classified as sales promotion." Vojticek v. Commissioner, T.C. Memo. 1995-444. The conflict of interest inherent in the relationships between HBF and Cox and Lignell

should have caused petitioner to seek advice from an independent adviser.

Petitioner points to a brochure of HBF which purports to list the qualifications of Cox and Lignell. However, this self-serving HBF brochure is not sufficient evidence to establish that Cox and Lignell in fact were qualified and independent tax experts on whose advice petitioner reasonably relied. Both worked for HBF. Their testimony was not presented to us.

We conclude that petitioner's reliance on Cox and Lignell does not constitute reasonable cause.

Petitioners argue that they relied on the advice of FPG--an independent tax preparer--to prepare their Federal income tax returns. Petitioners emphasize that FPG had no association with HBF. However, reliance on a second professional's advice is subject to the same test discussed above. See Addington v. Commissioner, 205 F.3d 54, 59 (2d Cir. 2000), affg. Sann v. Commissioner, T.C. Memo. 1997-259; Collins v. Commissioner, 857 F.2d 1383, 1386 (9th Cir. 1988), affg. Dister v. Commissioner, T.C. Memo. 1987-217.

It appears that FPG was not provided the complete and accurate information necessary to prepare accurately petitioners' Federal income tax returns. As has been stated: "The mere fact that a certified public accountant has prepared a tax return does not mean that he or she has opined on any or all of the items

reported therein." <u>Neonatology Associates, P.A. v. Commissioner</u>, <u>supra</u> at 100. The details of the discussions petitioners had with representatives of FPG are not in the record, and there is no evidence that petitioners either asked FPG to conduct a meaningful review of the plan or that FPG did so on its own. FPG represented to petitioners that the returns were correct only according to the financial data HBF provided. FPG did not claim that the plan HBF established was proper; FPG simply stated that the returns accurately reflected data HBF provided.

Petitioner appears to be a successful businessman and should not have implemented HBF's plan without consulting independent tax or legal counsel.

Petitioners pursued what appears to have been a patently improper tax avoidance scheme which they have conceded was improper. Petitioners have not established reasonable cause for the accuracy-related penalties.

We sustain respondent's determination of the section 6662(a) accuracy-related penalty for each of the years in issue.

To reflect the foregoing,

<u>Decision will be entered</u>

<u>for respondent</u>.