Ralph P. DUPONT and Barbara J. Dupont, Plaintiffs,

v.

UNITED STATES of America, Defendant.

Civ. No. 07–00458 ACK–KSC.

United States District Court, D. Hawai'i.

Jan. 20, 2009.

Christi–Anne Hiromi Kudo Chock, Douglas C. Smith, Tricia K.F. Lee, Damon Key Leong Kupchak Hastert, Honolulu, HI, for Plaintiffs.

Amy Matchison, Goud P. Maragani, U.S. Department of Justice, Washington, DC, Harry Yee, Office of the United States Attorney, Honolulu, HI, for Defendant.

## ORDER DENYING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

ALAN C. KAY, Senior District Judge.

### PROCEDURAL BACKGROUND

On September 5, 2007, Plaintiffs Ralph P. Dupont ("Mr. Dupont") and Barbara J. Dupont ("Mrs. Dupont") (collectively, "Plaintiffs") filed in this Court a Complaint against the United States of America ("Defendant"). The Complaint alleges a claim for tax refund of monies that Defendant has allegedly withheld unlawfully from Plaintiffs. *See* Complaint ¶¶ 19–26. Plaintiffs request this Court to order Defendant to pay Plaintiffs a refund of $55,117.00, as well as an award of reasonable litigation costs. Complaint ¶ 25.

On December 5, 2007, Defendant filed an Answer in this Court. In the Answer, Defendant admitted that Plaintiffs made a request for an additional refund of $55,117.00. Answer ¶ 22. Defendant further admitted that the Internal Revenue Service ("I.R.S.") did not grant this request for additional refund. *Id.* ¶ 23. Defendant denied, however, that the decision to withhold a refund was unlawful, and denied that Plaintiffs are entitled to the amount alleged. *Id.* ¶¶ 24–25. Defendant requests this Court to deny Plaintiffs' claim for refund, and further award Defendant reasonable costs. Answer at 7.

On October 6, 2008, Plaintiffs filed a Motion for Summary Judgment ("Motion") against Defendant. On the same day, Plaintiffs also filed a Separate Concise Statement of Facts in support of the Motion ("Motion CSF"). Plaintiffs attached the declaration of Mr. Dupont ("Dupont Decl."), and Exhibits A–G.

On October 31, 2008, Defendant filed a Counter Motion for Summary Judgment and a Memorandum in Opposition to Plaintiffs' Motion for Summary Judgment ("Counter Motion"). Defendant also filed a Separate Concise Statement of Facts ("Counter Motion CSF") and attached the declaration of Defendant's attorney, Amy Matchison ("Matchison Decl."), which authenticates Exhibits A–G as true and correct copies of the original documents.

On November 26, 2008, Plaintiffs filed a Memorandum in Opposition to Defendant's Counter Motion ("Counter Motion Opposition") as well as a separate Reply to Defendant's Opposition to the Motion ("Motion Reply").[1]

On December 2, 2008, Defendant filed a Reply to Plaintiffs' Opposition of the Counter Motion ("Counter Motion Reply").

The Court held a hearing on the Motion and Counter Motion on December 15, 2008 at 11:00 A.M.

## FACTUAL BACKGROUND [2]

The parties do not dispute the facts that are relevant to the resolution of this Motion. Plaintiffs are husband and wife, and the sole partners in the Dupont Law Firm ("Dupont firm"), a Connecticut law firm formerly known as Dupont and Radlauer. Motion CSF ¶ 1; Counter Motion Ex. A at 12:17–21.

In 2000, the Dupont firm set up a qualified defined benefit pension plan.[3] Counter Motion CSF ¶ 5; *see* Motion CSF ¶ 2. This type of plan provides a guaranteed benefit to the participants in the plan, starting at the retirement date designated by the plan, and continuing through the participant's life expectancy, or the joint life expectancy of the participant and his or her spouse. Counter Motion CSF ¶ 5, n. 6; Counter Motion Ex. C at 22:14–24.

---

1. Defendant correctly points out that Plaintiffs' Opposition to the Counter Motion and Reply should have been combined into one document not exceeding 15 pages, in accordance with this District's local rules. *See* District of Hawaii Local Rules 7.9, 7.5(c). The Court notes that Plaintiffs instead filed two separate documents, with a combined total of 18 pages.

2. The facts as recited in this Order are for the purpose of disposing of these motions and are not to be construed as findings of fact that the parties may rely on in future proceedings in this case.

3. At present, the Dupont firm no longer has a defined benefit pension plan. However, the parties do not dispute that the plan was in existence during the relevant period of 2000 to at least 2005, specifically for the relevant years of 2002 and 2003. Counter Motion Ex. B at 21:9–16; Motion CSF ¶ 2. Further, the parties do not dispute that the defined benefit pension plan was qualified under the Internal Revenue Code, such that contributions to the plan could be deductible. Counter Motion CSF ¶ 5, n. 7; *see* Motion CSF ¶ 3.

Plaintiffs were the only participants in the defined benefit pension plan for the Dupont firm. Counter Motion CSF ¶ 6.

Plaintiffs' defined benefit pension plan was set up and maintained by Pentec, Inc. ("Pentec"), a company which designs and maintains qualified retirement plans for all kinds of businesses. Counter Motion CSF ¶ 7. Each year, Pentec prepared an actuarial evaluation report, in which Pentec determined the amount that Plaintiffs would need to pay into their defined benefit plan so that the plan could adequately fund the retirement benefits that the plan was designed to provide. Counter Motion CSF ¶¶ 12–13. This amount was decided each year as of the valuation date designated by the defined benefit pension plan; specifically, in Plaintiffs' defined benefit pension plan, the last day of the year.[4] Counter Motion CSF ¶¶ 14–15. Thus, every year, after the valuation date, Pentec would prepare an actuarial valuation report, informing Plaintiffs of the required contribution in specific dollar amounts.[5] Counter Motion CSF ¶ 19. Plaintiffs then had eight

and a half months from the end of the plan year to pay the required amount that Pentec reported to them. Counter Motion CSF ¶ 20; Counter Motion Ex. C at 37:2–18.

For the 2002 taxable year, Pentec informed Plaintiffs that the required contribution was $169,049.00. *See* Motion Ex. A–2; Counter Motion CSF ¶ 23. On August 6, 2003, Mr. Dupont made a payment of $168,615.00, meeting the required amount for the 2002 plan year, and satisfying the time requirement for payment.[6] Motion CSF ¶ 4; Counter Motion CSF ¶ 25. This amount would have been deductible on Mr. Dupont's 2002 tax returns; however, for the 2002 tax year, Mr. Dupont reported only minimal earned income from the Dupont firm, and further reported a loss for the Dupont firm as a whole.[7] Counter Motion CSF ¶¶ 26–27. Thus, even though Mr. Dupont claimed the deduction of his pension plan contribution of $168,615.00 on his 2002 1040 form, he was actually only able to deduct $12,309.00 of that amount and unable to deduct

4. Michael Callahan, the owner of Pentec during the relevant period, described in deposition testimony the difference between defined benefit plans and defined contribution plans:

The employer in a defined benefit plan takes on the investment risk where if the investments do well, they [the employer] put in less money; if the investments do very poorly, they have to put in more money .... [in] a defined contribution plan, the employer defines how they're going to put the money in, how much, and the investment risk is taken on by the plan participant, not by the employer. There's no guarantee.

Counter Motion Ex. C at 23:4–14. Thus, for defined benefit plans, when the investments in the plan do poorly, the participant's required contribution amount for that year will be greater. Counter Motion CSF ¶ 17. Conversely, when the investments do well in a given year, the participant will have to contribute a smaller amount. *Id.* Further, if the investments do very well in a given year, a defined benefit plan participant may not be

required to contribute any amount at all. Counter Motion Ex. C at 26:2–7.

5. In determining the required contribution figures for a given year, Pentec looked primarily at two factors: the assets currently within the pension plan, and the amount needed to adequately pay out the defined benefit. Counter Motion Ex. C at 23:15–23.

6. Pentec's number of $169,049.00 included interest calculated through September 15, 2003. Counter Motion CSF ¶ 23, n. 12. Because Mr. Dupont made the payment in August of 2003, a portion of the interest had not yet accrued, and thus the required payment was only $168,615.00. *Id.*

7. Mr. Dupont's 2002 individual 1040 form was timely filed on October 15, 2003, with no income tax owed. Motion CSF ¶ 6; Counter Motion Ex. E at 2. Mr. Dupont filed an individual tax return in 2002 because he and Mrs. Dupont were not married until August 15, 2003. Counter Motion Ex. A at 15:24–16:1.

$156,306.00 ("excess contribution").[8] Motion CSF ¶ 6; Counter Motion CSF ¶ 28.

By contrast, in 2003, Mr. Dupont's income from the Dupont firm was $855,310 and Mrs. Dupont's income was $300,577.[9] Counter Motion CSF ¶ 30. For the 2003 taxable year, Pentec informed Plaintiffs that the required contribution was $174,965.00. Motion Ex. A–3. This amount was fully contributed by Plaintiffs on March 17, 2004, along with an amount the Plaintiffs had prepaid on August 3, 2003. Motion CSF ¶ 3.

On April 15, 2004, Plaintiffs made a prepayment of taxes, prior to filing their 2003 returns, in the amount of $510,000.00. Answer ¶ 13; *see* Counter Motion Ex. F at 2. On October 15, 2004, Plaintiffs filed a joint 1040 income tax return for 2003. Counter Motion Ex. F. Plaintiffs claimed that they overpaid the government in the amount of $133,926.00 because they only owed taxes totaling $376,074.00. Answer ¶ 13; Counter Motion Ex. F at 2. On their October return, Plaintiffs deducted the amount of $174,965.00 that they had contributed to the defined benefit pension plan for 2003; the Plaintiffs did not, however, claim a deduction for the excess amount not deductible in the previous tax year on Mr. Dupont's return. Counter Motion Ex. F.

On September 9, 2005, Plaintiffs filed a joint amended return, form 1040X, for the 2003 tax year. Motion CSF ¶ 9: Counter Motion CSF ¶ 31; Counter Motion Ex. G.

The purpose for the amended return was to take a further deduction of $156,306 for the "pension deduction paid in 2003, not previously deducted." [10] Counter Motion Ex. G at 2; Motion CSF ¶ 10. Thus, Plaintiffs' amended return claimed an additional refund amount of $55,117.00, the difference in taxes owed once the additional deduction was subtracted from Plaintiffs' adjusted gross income. Counter Motion Ex. G at 1; Answer ¶ 15. This was the only reason given by the Plaintiffs on the amended return for the additional refund. *See* Counter Motion Ex. G at 2.

Defendant concedes that the I.R.S. did not take any action on the Plaintiffs' 1040X amended return, explicitly admitting that the I.R.S. did not grant Plaintiffs' request for an additional refund of $55,117.00. Answer ¶¶ 17, 23; *see* Motion CSF ¶ 21.

### STANDARD

The purpose of summary judgment is to identify and dispose of factually unsupported claims and defenses. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Summary judgment is therefore appropriate if the "pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c).

---

8. It is unclear why Mr. Dupont was allowed to deduct even $12,309.00 when he reported a loss for the partnership. At the hearing, neither Plaintiffs nor Defendant could explain definitively why the $12,309.00 deduction was allowed by the I.R.S. The parties agreed, however, that the I.R.S. did not challenge Mr. Dupont's deduction of $12,309.00 in 2002.

9. In fact, Plaintiffs report that Mr. Dupont made approximately $1,030.000.00 from the Dupont firm in 2003. Motion CSF ¶ 12. Exactly how much Mr. Dupont made from the

Dupont firm in 2003 is not relevant to the resolution of the Motion and Counter Motion, so long as the parties agree, which they do, that Mr. Dupont made at least $855,310.00 in that year.

10. The actual contribution amount for the 2002 taxable year was $168,615.00. However, because Mr. Dupont was able to deduct $12,309.00, only $156,306.00 was in excess, and thus that was the amount claimed by Plaintiffs on the amended return for 2003, filed by Plaintiffs in 2005.

"A fact is 'material' when, under the governing substantive law, it could affect the outcome of the case. A 'genuine issue' of material fact arises if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.' " *Thrifty Oil Co. v. Bank of Am. Nat'l Trust & Sav. Ass'n*, 322 F.3d 1039, 1046 (9th Cir.2003) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)) (internal citation omitted).[11] Conversely, where the evidence could not lead a rational trier of fact to find for the nonmoving party, no genuine issue exists for trial. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (citing *First Nat'l Bank v. Cities Serv. Co.*, 391 U.S. 253, 289, 88 S.Ct. 1575, 20 L.Ed.2d 569 (1968)).

■ The moving party has the burden of persuading the court as to the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323, 106 S.Ct. 2548; *Miller v. Glenn Miller Productions*, 454 F.3d 975, 987 (9th Cir.2006). The moving party may do so with affirmative evidence or by " 'showing'—that is pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325, 106 S.Ct. 2548.[12]

■ Once the moving party satisfies its burden, the nonmoving party cannot simply rest on the pleadings or argue that any disagreement or "metaphysical doubt" about a material issue of fact precludes summary judgment. *See Celotex*, 477 U.S. at 323, 106 S.Ct. 2548; *Matsushita Elec.*, 475 U.S. at 586, 106 S.Ct. 1348; *Cal. Arch. Bldg. Prods., Inc. v. Franciscan Ceramics, Inc.*, 818 F.2d 1466, 1468 (9th Cir.1987).[13] The nonmoving party must instead set forth "significant probative evidence" in support of its position. *T.W. Elec. Serv. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir.1987). Summary judgment will thus be granted against a party who fails to demonstrate facts sufficient to establish an element essential to his case when that party will ultimately bear the burden of proof at trial. *See Celotex*, 477 U.S. at 322, 106 S.Ct. 2548.

When evaluating a motion for summary judgment, the court must construe all evidence and reasonable inferences drawn therefrom in the light most favorable to the nonmoving party. *See T.W. Elec. Serv.*, 809 F.2d at 630–31.[14] Accordingly, if "reasonable minds could differ as to the import of the evidence," summary judgment will be denied. *Anderson*, 477 U.S. at 250–51, 106 S.Ct. 2505.

---

**11.** Disputes as to immaterial issues of fact do "not preclude summary judgment." *Lynn v. Sheet Metal Workers' Int'l Ass' n*, 804 F.2d 1472, 1483 (9th Cir.1986).

**12.** When the moving party bears the burden of proof at trial, that party must satisfy its burden with respect to the motion for summary judgment by coming forward with affirmative evidence that would entitle it to a directed verdict if the evidence were to go uncontroverted at trial. *Miller*, 454 F.3d at 987 (quoting *C.A.R. Transp. Brokerage Co., Inc. v. Darden Restaurants, Inc.*, 213 F.3d 474, 480 (9th Cir.2000)). When the nonmoving party bears the burden of proof at trial, the party moving for summary judgment may satisfy its burden with respect to the motion for

summary judgment by pointing out to the court an absence of evidence from the nonmoving party. *Miller*, 454 F.3d at 987.

**13.** Nor will uncorroborated allegations and "self-serving testimony" create a genuine issue of material fact. *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061 (9th Cir. 2002); *see also T.W. Elec. Serv. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir.1987).

**14.** At the summary judgment stage, the court may not make credibility assessments or weigh conflicting evidence. *Anderson*, 477 U.S. at 249, 106 S.Ct. 2505; *Bator v. State of Hawaii*, 39 F.3d 1021, 1026 (9th Cir.1994).

## DISCUSSION

■■ In interpreting the Internal Revenue Code ("I.R.C."), a court should "strictly construe" provisions granting deductions and should "give deference to I.R.S. rulings and interpretations of the Code." *Durando v. United States*, 70 F.3d 548, 550 (9th Cir.1995). "The burden of proving an erroneous deficiency in a tax refund suit rests with the taxpayer." *Id.*

Both parties urge this Court that they are each entitled to judgment as a matter of law because the other party misinterprets the relevant I.R.C. provisions and the accompanying Treasury Regulations. Plaintiffs contend that the I.R.C., and the corresponding regulations, allow Plaintiffs to deduct an additional $156,306.00 (the amount Mr. Dupont was unable to deduct in 2002) from their 2003 return, resulting in a refund of $55,117.00 from the Defendant. Conversely, Defendant argues that the I.R.C. and the regulations prohibit Plaintiffs from making the additional deduction in 2003, thus precluding the additional refund that Plaintiffs seek. As to these arguments, the Court finds that Defendant's interpretation of the I.R.C. is accurate, and Plaintiffs are not permitted to take the additional deduction in 2003.

## I. Contributions Exceeding the Earned Income of Self–Employed Individuals Do Not Qualify as Deductible Contributions.

■ The parties do not dispute that Plaintiffs classify as self-employed individuals under the I.R.C. *See* I.R.C. § 401(c)(1). Thus, Plaintiffs' ability to deduct pension contributions is limited by I.R.C. § 404(a)(8)(c).[15] Generally, deductions are permitted for contributions made by "an employer for the exclusive benefit of his employees[.]" I.R.C. § 401(a). Under this general definition, self-employed individuals could not deduct contributions to pension plans in the same way that an employer could. *Durando*, 70 F.3d at 550; *see Gale v. United States*, 768 F.Supp. 1305, 1309 (N.D.Ill.1991) ("prior to the passage of this section [404(a)(8) ], self-employed individuals could not deduct their contributions"). However, "[s]ection 404(a)(8) extends this benefit to self-employed individuals by expanding the definitions of the terms 'employee' and 'employer.'" *Id.; see* I.R.C. § 401(c)(4) ("A partnership shall be treated as the employer of each partner who is an employee[.]"). "Under § 404(a)(8)(A), by reference to § 401(c)(1) and § 401(c)(4), a self-employed individual is treated both as his

---

**15.** Section 404(a)(8) states:

**Self-employed individuals.**—In the case of a plan included in paragraph (1), (2), or (3) which provides contributions or benefits for employees some or all of whom are employees within the meaning of section 401(c)(1), for purposes of this section—

(A) the term "employee" includes an individual who is an employee within the meaning of section 401(c)(1), and the employer of such individual is the person treated as his employer under section 401(c)(4);

(B) the term "earned income" has the meaning assigned to it by section 401(c)(2);

(C) the contributions to such plan on behalf of an individual who is an employee within the meaning of section 401(c)(1) shall be considered to satisfy the conditions of section 162 or 212 to the extent that such contributions do not exceed the earned income of such individual (determined without regard to the deductions allowed by this section) derived from the trade or business with respect to which such plan is established, and to the extent that such contributions are not allocable (determined in accordance with regulations prescribed by the Secretary) to the purchase of life, accident, health, or other insurance; and

(D) any reference to compensation shall, in the case of an individual who is an employee within the meaning of section 401(c)(1), be considered to be a reference to the earned income of such individual derived from the trade or business with respect to which the plan is established.

own employer and employee." *Gale,* 768 F.Supp. at 1308. Therefore, Plaintiffs fall under the umbrella of § 404(a)(8) because "[t]hese expanded definitions explicitly encompass partners[.]" *Durando,* 70 F.3d at 550.

Although § 404(a)(8) provides self-employed individuals with the ability to deduct pension contributions, it limits the amount of contributions that may be deducted in a given year "to the extent that such contributions do not exceed the earned income of such individual." *See* I.R.C. § 404(a)(8)(C). This limitation is in addition to the maximum deductible amount, discussed *infra,* that is applicable to all employers. Thus, self-employed individuals, like Plaintiffs, may only deduct up to the *lesser* of the following: the general maximum deductible amount pursuant to § 404(a)(1)(A), or the amount of earned income in that year pursuant to § 404(a)(8)(C).

Plaintiffs contend that Treasury Regulation § 1.404(e)–1A establishes that the above earned income limitation applies only to defined contribution plans, and exempts defined benefit plans. Motion at 18. Defendant argues to the contrary, that defined benefit plans are not exempted by that regulation, and are thus subject to § 404(a)(8)(C). Counter Motion at 10. Plaintiffs do not cite, nor can the Court find, any specific language to support any exemption from § 404(a)(8)(C) for defined benefit plans. *See* 26 C.F.R. § 1.404(e)–1A(a) (stating that "[p]aragraph (b) of this section [which includes the earned income limitation language] provides general rules of deductibility" for "contributions to qualified plans").[16] Therefore, the Court holds

that the earned income limitation applies to Plaintiffs' defined benefit plan.

Accordingly, in 2002, Plaintiffs could only deduct $12,309.00 of their 2002 required contribution and any further deduction would have exceeded their earned income for that year and was therefore not deductible.[17] *See* S.Rep. No. 992, 87th Cong., at 1 (1962) ("[T]he new section 404(a)(8) provides that certain amounts [ (i.e., amounts in excess of earned income) ] contributed on behalf of self-employed individuals do not satisfy the requirements of sections 162 or 212 and are, therefore, not *deductible* under sections 404(a)(1), (2), or (3).") (emphasis added). In fact, Plaintiffs do not dispute that the earned income limitation precluded any further deduction in 2002. *See* Motion at 2 ("Because the amount of the contribution exceeded Mr. Dupont's income from D & R in 2002, only $12,309.00 was deducted on his individual return for 2002."); *see also* Counter Motion at 11 ("plaintiffs' admitted lack of earned income from the law firm in 2002 is the cause for their failure to deduct the contribution in tax year 2002").

## II. Plaintiffs' 2002 Excess Contribution is Not Deductible in 2003 Because Plaintiffs Already Deducted the Maximum Amount Permitted by § 404(a)(1)(A) for their 2003 Return.

█ As stated earlier, Plaintiffs may only deduct up to the *lesser* of the general maximum deductible amount pursuant to § 404(a)(1)(A), or the amount of earned income in that year pursuant to § 404(a)(8)(C). Although a deduction of the excess contribution was precluded by

---

16. The Court notes that defined benefit plans are explicitly exempted from other limitations that are irrelevant here. *See, e.g.,* 26 C.F.R. § 1.404(e)–1A(d) (exempting defined benefit plans from special limitations on contributions for life insurance).

17. Again, if the Dupont Firm reported a loss, it is unclear to the Court why the government allowed any deduction for 2002 at all. Both parties represented, however, that the deduction of $12,309.00 in 2002 is not disputed. *See* footnote 8, supra.

the earned income limitation in 2002, a deduction of the excess contribution in 2003 was precluded by the maximum deductible limitation of § 404(a)(1)(A). I.R.C. § 404, codified in 26 U.S.C. § 404, governs tax deductions for contributions made to pension plans like Plaintiffs' defined benefit pension plan. The parties agree that I.R.C. § 404(a)(1)(A) places a limit on the amount that is deductible "[i]n the taxable year when paid." *Id.* Specifically, the relevant limitation in this case states that deductions are capped at "the amount necessary to satisfy the minimum funding standard provided by section 412(a) for plan years ending within or with such taxable year (or for any prior plan year)[.]" *Id.* § 404(a)(1)(A)(i).[18] The parties do not dispute that Plaintiffs' contributions for 2002 and 2003 satisfy I.R.C. § 412 minimum funding standards. Motion CSF ¶ 3.

The parties also do not dispute the maximum deductible amount and the required contribution amount for Mr. Dupont's 2002 return. The maximum deductible for Mr. Dupont's 2002 return was $168,615.00, which was also the required contribution amount for that year as designated by Pentec. Motion Reply at 6; Counter Motion at 5; Motion Ex. A–2. In fact, Mr. Dupont did attempt to deduct this full amount on his 2002 individual form 1040.

*See* Counter Motion Ex. E at 1. However, because he had minimal income for that year, he was unable to use the deduction to the amount of $156,306.00.

Thus, the parties' dispute is over the maximum deductible amount on Plaintiffs' 2003 return. Plaintiffs contend that Treasury Regulation § 1.404(a)–14(e), 26 C.F.R. § 1.404(a)–14(e), enlarges the maximum deductible amount in 2003 such that Plaintiffs may claim the excess contribution from 2002. The Court finds as a matter of law, however, that § 404 limits the maximum deductible amount such that Plaintiffs could not claim the 2002 excess contribution on their 2003 return because they have already deducted the maximum allowable amount for 2003.[19]

For the year 2003, Pentec informed Plaintiffs of, and Plaintiffs timely contributed, the required funding amount of $174,695.00. Motion Ex. A–3; Motion CSF ¶ 5. Pentec's letter to Mr. Dupont stated that this same dollar amount was also the maximum deductible for the 2003 tax year. Motion Ex. A–3; *see* I.R.C. § 404(a)(1)(A)(i). Plaintiffs contend, however, that Treasury Regulation § 1.404(a)–14(e) enlarges the maximum deductible amount by permitting Plaintiffs to deduct their 2003 contributions along with the excess contribution from 2002.[20] Motion at 16; Motion Reply at 6–7. Defendant counters that Plaintiffs' reading of the reg-

---

**18.** Some courts have stated that § 404(a)(1)(A)(i) "establishes a deductible 'floor'" because the maximum deductible amount is the greater of subsections (i), (ii), and (iii). *Citrus Valley Estates, Inc. v. C.I.R.*, 99 T.C. 379, 443, 1992 WL 238873 (1992). However, where the only applicable provision, as is the case here, is subsection (i), the maximum deductible amount is the amount determined under that subsection.

**19.** Plaintiffs also argue that § 404(a)(1)(E) specifically allows for a carryover of the excess contribution from 2002 to Plaintiffs' 2003 return. Motion Reply at 9. It is not necessary for the Court to address what amounts the carry over provision may apply to because the carryover is also subject to the same maximum deductible amount (and

Plaintiffs have already deducted this maximum amount for 2003). *See* I.R.C. § 404(a)(1)(E) (explicitly stating that any carryover deduction can only be applied "to the extent of the difference between the amount paid and deductible in each such succeeding year and the maximum amount deductible for such year."); Jeffrey D. Mamorsky, Employee Benefits Law ERISA and Beyond § 3A.01(1)(b)(I) (paraphrasing the same limitations of the carryover provision). Plaintiffs already deducted the maximum allowable amount for 2003 when they deducted their 2003 required contribution of $174,965.00.

**20.** At the hearing Plaintiffs also argued that in reading all the relevant provisions together, as long as the taxpayer makes a required

ulation is incorrect, and thus the 2002 excess amount cannot be added on as a deduction in 2003. The Court agrees with Defendant that Plaintiffs misread the pertinent regulation. Accordingly, the Court finds as a matter of law that the regulations do not permit Plaintiffs to deduct the 2002 excess contribution in 2003 because the maximum deductible limit has already been reached.

Treasury Regulation § 1.404(a)–14 is the relevant regulation in determining a maximum deductible amount under § 404(a)(1)(A). The purpose section of the regulation states that "[t]his section provides rules for *determining the deductible limit under section 404(a)(1)(A)* of the Internal Revenue Code of 1954 for defined benefit plans." 26 C.F.R. § 1.404(a)–14(a) (emphasis added). The regulation further provides a specific formula to determine the § 404(a)(1)(A) limit in a given year:

> For purposes of determining the deductible limit under section 404(a)(1)(A)(i), the deductible limit with respect to a plan year is the sum of—
>
> > (i) The amount required to satisfy the minimum funding standard of section 412(a) (determined without regard to section 412(g)) for the plan year and

> (ii) An amount equal to the includible employer contributions. The term "includible employer contributions" means employer contributions which were required by section 412 for the plan year immediately preceding such plan year, and which were not deductible under section 404(a) for the prior taxable year of the employer solely because they were not contributed during the prior taxable year (determine with regard to section 404(a)(6)).

26 C.F.R. § 1.404(a)–14(e). For 2003, the applicable amount for subsection (i) is the $174,695.00 contributed by Plaintiffs. There appears to be no dispute as to this point. *See* Counter Motion at 10–11; Motion Reply at 7. However, the parties disagree as to the interpretation and application of subsection (ii). *See* Counter Motion at 10–11; Motion Reply at 7. A reading of the plain language of subsection (ii) clearly establishes that subsection (ii) does not apply to the Plaintiffs' excess contribution from 2002; thus, the maximum deductible amount for 2003 was $174,695.00.

Subsection (ii) enlarges the maximum deductible amount for pension contributions when there are also "includible employer contributions"—that is, contribu-

---

contribution pursuant to § 412, that amount should then be added on as a deductible amount to whatever the deductible limit already is in any given year. In other words, Plaintiffs argued that any required contribution has automatic deductible status, and thus can be deducted as long as it meets the earned income limitation in the deducting year, but regardless of other provisions creating a maximum deductible amount. The Court finds, however, that the relevant provisions do not provide this leeway. Instead, the regulations only provide the ability to add to the maximum deductible amount in the specific situation where a contribution could not be deducted in the year it is attributed to, solely because the contribution was not made within that taxable year. 26 C.F.R. § 1.404(a)–14(e)(ii). Outside of that specific situation, even required contributions under

§ 412 are subject to maximum deduction limitations and may not be deductible.

At the hearing, Defendant also pointed out that the I.R.C. does contemplate situations like Mr. Dupont's in 2002, by providing an exemption from a 10 percent excise tax for required contributions that are not deductible specifically because the earned income in that year was less than the required contribution amount. *See* I.R.C. § 4972(c)(4). The Court does not see this exemption as providing Plaintiffs with relief similar to the refund that they seek. However, this provision does show that Congress was well aware of situations similar to Mr. Dupont's in 2002. Thus, a provision could have been made to provide the deduction that Plaintiffs argue should be allowed; however, such a provision is absent from the I.R.C.

tions "which were not deductible under section 404(a) for the prior taxable year of the employer *solely* because *they were not contributed during the* prior taxable year." [21] 26 C.F.R. § 1.404(a)–14(e)(ii) (emphasis added). The Court finds, as a matter of law, that subsection (ii) bears no relationship to Plaintiff's 2002 excess contribution.

Plaintiffs' inability to deduct the excess contribution in 2002 had nothing to do with a failure to make the contribution in 2002; in fact, Plaintiffs 2002 contributions are deemed paid in 2002. Subsection (ii) advises that whether a contribution was paid within the taxable year must be "determine[d] with regard to [I.R.C.] section 404(a)(6)." 26 C.F.R. § 1.404(a)–14(e)(ii). Section 404(a)(6) provides in relevant part:

> [A] taxpayer shall be deemed to have made a payment on the last day of the preceding taxable year if the payment is on account of such taxable year and is made not later than the time prescribed by law for filing the return for such taxable year (including extensions thereof).

*Id.* In other words, any contribution payment within the time period to file a tax return (including extensions) for that year, will be deemed a payment for that year so long as " 'the payment is treated by the plan in the same manner that the plan would treat a payment actually received on the last day of such preceding taxable year[.]' " *Lucky Stores, Inc. and Subsidiaries* 966 (9th Cir.1998) (quoting Rev. Rul. 76–28, 1976–1 C.B. 107). Therefore, under these timing rules, a taxpayer has approximately eight and a half months after the close of the plan year to pay the required contribution and have it still be deemed as a contribution made in that prior year for purposes of § 404. *See* H.R.Rep. No. 93–1280 (1974), reprinted in 1974 U.S.C.C.A.N. 5038, 5071 ("contribution may relate back to the plan year if it is made within 2 1/2 months after the close of that plan year, plus any extension granted by the Internal Revenue Service up to an additional 6 months (for a maximum of 8 1/2 months after the end of the year)").

Curiously, Plaintiffs do *not* contest that the 2002 contribution should not be deemed as made in 2002 pursuant to § 404(a)(6). [22] Further, as a matter of law, the Court finds that Mr. Dupont indeed made the required 2002 contribution within the eight and a half month period provided by § 404(a)(6). [23] Therefore, there is no basis for Plaintiffs to argue that the excess contribution was not deducted in 2002 solely because it was not contributed in 2002. In fact, in apparently misinterpreting the regulation, Plaintiffs admit

---

**21.** This subsection provides a means by which a contribution made to meet a prior year's minimum funding requirement could still be deducted in a later year. Thus, the purpose of this subsection is to allow for deduction of delayed contributions that were otherwise required contributions in a previous year. Subsection (ii) is partly a reiteration of I.R.C. § 404(a)(1)(A)(i), which states that the deductible limit is the amount contributed to satisfy the funding requirement "for plan years ending within or with such taxable year (*or for any prior plan year*)[.]" I.R.C. § 404(a)(1)(A)(i) (emphasis added).

**22.** Plaintiffs would need to make this argument to show that the excess contribution should be deductible as an includible employer contribution in 2003.

**23.** There is no dispute that Mr. Dupont made the 2002 contribution payment on August 6, 2003 in the amount of $168,615.00. Motion CSF ¶ 4; Counter Motion CSF ¶ 25. Further, there is no dispute that Mr. Dupont had until mid-September of 2003 (eight and a half months after the plan closing date of December 31, 2002) to make this contribution so that the contribution would be deemed paid in 2002. Counter Motion CSF ¶ 24; *See* Motion CSF ¶ 4 ("On August 6, 2003, D & R *timely* made the required contribution for the year ended December 31, 2002 . . . in the amount of $168,615.00.") (emphasis added).

that subsection (ii) does not apply to the 2002 excess contribution. Motion Reply at 7 ("it is not the case that this amount was not deductible ... solely ... because $156,615.00 was not contributed during the prior taxable year 2002.") [24] (emphasis added) (brackets omitted).

Accordingly, the Court finds that subsection (ii) is inapplicable on these facts. Thus, the maximum deductible amount in 2003 was determined by subsection (i), which the parties do not dispute, and this Court now holds, was $174,695.00. Because Plaintiffs deducted this amount on their original 2003 joint 1040 form, there is no remaining deduction to which Plaintiffs could deduct the 2002 excess contribution. *See* Counter Motion Ex. F. Therefore, Plaintiffs are not entitled to a refund under § 404 and Defendant is entitled to judgment as a matter of law on its Counter Motion.

### III. No Deduction Under I.R.C. § 162 or § 172: The 2002 Excess Contribution is Not Deductible as a Trade or Business Expense and Must be Deducted Under § 404.

■ Plaintiffs argue that even if the excess amount is not deductible in 2003

under § 404, it is nevertheless deductible as a reasonable trade or business expense under I.R.C. § 162.[25] Motion at 19–20. Defendant counters that any deduction under § 162 is preempted by § 404 if it is a contribution to a deferred compensation plan.[26] Counter Motion at 14. The Court agrees with the Defendant, and holds that § 404 alone governs Plaintiffs' contributions to the defined benefit plan, and thus precludes any deduction by Plaintiffs under § 162.

Section 162 generally allows a deduction for "a reasonable allowance for salaries or other compensation for personal services actually rendered[.]" I.R.C. § 162(a)(1). The Treasury Regulations for § 162, however, make it clear that contributions to a defined benefit pension plan may not be deducted under § 162; instead, they must be deducted, if at all, under § 404:

> [S]uch amounts shall not be deductible under section 162(a) if, under any circumstances, they may be used to provide benefits under a stock bonus, pension, annuity, profit-sharing, or other deferred compensation plan of the type referred to in section 404(a). In such an

---

24. The Court notes that given the confusing negative language of subsection (ii) ("*not* deductible ... *solely* because they were *not* contributed") combined with Plaintiffs' further negative assertion ("it is *not* the case"), Plaintiffs may have simply made a typographical error. *See* Motion Reply at 7. However, Plaintiffs did not represent at the hearing that such a mistake had been made, even after Defendant argued in its papers that this statement was essentially an admission of the inapplicability of subsection (ii). Counter Motion Reply at 2–3. Thus, it appears that Plaintiffs may be misinterpreting the meaning of the subsection.

25. Section 162 provides a deduction for "all the ordinary expenses paid or incurred during the taxable year in carrying on any trade or business[.]" I.R.C. § 162(a).

26. Defendant also argues that under the variance doctrine, Plaintiffs are not entitled to a deduction under § 162 because they never made a claim for a § 162 deduction on their amended 2003 return, thus failing to give the I.R.S. notice of this claim, which notice is a prerequisite for filing a refund suit. Counter Motion at 12–13. Because the Court holds that § 404 preempts any deduction by Plaintiffs under § 162, the Court need not reach a determination as to whether the variance doctrine would preclude a deduction under § 162. Similarly, Plaintiffs argue at length that Mr. Dupont's compensation was reasonable under § 162 for his work on complex litigation against the Iranian government. Motion at 20–25. Because § 404 preempts any deduction under § 162, the Court need not determine whether Mr. Dupont's compensation was reasonable for § 162 purposes.

event, *the extent to which these amounts are deductible from gross income shall be governed by the provisions of section 404 and the regulations issued thereunder.*

26 C.F.R. § 1.162–10(a) (emphasis added). This means that because § 404(a) applies to the deduction of Plaintiffs' excess contribution, it cannot be deducted under any other I.R.C. section.[27] *Sklar, Greenstein & Scheer, P.C. v. C.I.R.,* 113 T.C. 135, 139, 1999 WL 608689 (1999) ("section 404 applies and preempts the deductibility of such contributions *under any other section* ") (emphasis added). Thus, § 404 occupies the field and "supplant[s] other code sections with respect to deductions for contributions to a deferred compensation plan." *Id.* Therefore, the Court finds that Plaintiffs excess contribution must be deducted, if at all, under § 404.

### CONCLUSION

For the foregoing reasons, the Court:

(1) DENIES Plaintiffs' Motion for Summary Judgment as to the Claim of Refund because the Plaintiffs have failed to show as a matter of law that they are entitled to a refund of $55,117.00; and

(2) GRANTS Defendant's Counter Motion for Summary Judgment as to the Claim of Refund. The Court finds that Plaintiffs are not entitled to an additional refund on their 2003 tax returns of $55,117.00 and that as a matter of law,

Defendant did not unlawfully withhold this amount.

IT IS SO ORDERED.

---

**27.** Thus, § 404 preemption of all other I.R.C. sections also precludes Plaintiff's argument that a deduction of the excess contribution under § 162 could then be carried forward to 2003 as a net operating loss pursuant to I.R.C. § 172. Motion at 19. Further, § 172 forbids § 404 contributions from being attributed to an individual's trade or business, buttressing the point that such contributions must be deducted under § 404, and not as a trade or business expense under § 162. *See* I.R.C. § 172(d)(4)(D) ("any deduction allowed under section 404 ... shall not be treated as

attributable to the trade or business of such individual"); *see also* Federal Income, Gift and Estate Taxation § 4.14(1) (2008) ("Contributions to a retirement plan on behalf of a proprietor or partner are not considered business deductions"). Moreover, under § 172, "[o]nly those net operating losses generated in an individual's trade or business are eligible for carryover treatment." Federal Income, Gift and Estate Taxation § 4.14. Therefore, Plaintiffs may not carry over or deduct the excess contribution pursuant to § 162 or § 172.