T.C. Summary Opinion 2010-146

UNITED STATES TAX COURT

CARLOS SADA, JR. AND AMANDA SADA, Petitioners v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 11362-08S.          Filed September 27, 2010.

Carlos Sada, Jr. and Amanda Sada, pro sese.

Brooke S. Laurie, for respondent.


DAWSON, Judge:  This case was heard pursuant to the

provisions of section 7463 of the Internal Revenue Code in effect

when the petition was filed.[1]  Pursuant to section 7463(b), the

decision to be entered is not reviewable by any other court, and

_____

[1]Unless otherwise indicated, references to sections other
than sec. 7463 are to the Internal Revenue Code (Code) in effect
for the years at issue, and Rule references are to the Tax Court
Rules of Practice and Procedure.

this opinion shall not be treated as precedent for any other case.

Respondent determined the following deficiencies in petitioners' Federal income taxes and accuracy-related penalties under section 6662(a) for 2004, 2005, and 2006:

| Year | Deficiency | Accuracy-Related Penalty Sec. 6662(a) |
|------|-----------|----------------------------------------|
| 2004 | $15,564 | $3,112.80 |
| 2005 | 28,182 | 5,636.40 |
| 2006 | 27,264 | 5,452.80 |

Respondent filed an amended answer asserting that petitioners are liable for an increased deficiency in income tax of $21,125 (a $5,561 increase) and an increased penalty under section 6662(a) of $4,225 (a $1,112.20 increase) for 2004, and an increased deficiency in income tax of $33,288 (a $5,106 increase) and an increased penalty under section 6662(a) of $6,657.60 (a $1,021.20 increase) for 2005.

After concessions by the parties,[2] the issues to be decided are:

_____

[2]The parties agree that (1) subject to the limitations in sec. 221(b), petitioners are allowed deductions for (A) student loan interest payments of $141 in 2004, $165 in 2005, and $157 in 2006 and (B) tuition and fees expenses of $3,000 in 2006; (2) petitioners omitted $49 of interest income from Texas State Bank on their 2004 return; and (3) petitioners have substantiated charitable contributions of $4,200 in 2004, $3,885 in 2005, and $3,955 in 2006.

(1) Whether petitioners are entitled to deductions claimed on Schedules C, Profit or Loss From Business (Sole Proprietorship), of their 2004, 2005, and 2006 Federal income tax returns;

(2) whether petitioners had gross receipts from a trade or business as reported on Schedules C of their 2004, 2005, and 2006 returns;

(3) whether depreciation petitioners claimed on their 2003 return is subject to section 1245 recapture in 2004;

(4) whether petitioners are liable for self-employment taxes on the gross receipts reported on Schedules C of their 2004, 2005, and 2006 returns and on gain realized on the sale of section 1245 property in 2004, if any;

(5) whether petitioners are entitled to deduct under section 213 medical expenses of $17,083 for 2006; and

(6) whether petitioners are liable for accuracy-related penalties under section 6662(a) for the years at issue.

## Background

Some of the facts have been stipulated. The stipulation of facts and the attached exhibits are incorporated herein by this reference. Petitioners are married individuals who filed joint Federal income tax returns for 2004, 2005, and 2006. Petitioners resided in Texas when their petition was filed. They have two children, who were ages 12 and 9 at the time of trial.

Petitioner Amanda Sada (Mrs. Sada) is a teacher and was employed as such during the years at issue.

Petitioner Carlos Sada (Mr. Sada) has a bachelor of science degree. He has been selling cars for 10 or 11 years. During the years at issue, he worked as a new car sales manager at Boggus Ford. As such he was entitled to purchase under the Ford D plan one or two new cars each year at $100 over the invoice cost plus tax, title, and license.

During the years at issue Mr. Sada purchased new vehicles from Boggus Ford, kept them for about a year, and then traded them in on the purchase of newer vehicles. The trade-in allowances he received for the old vehicles were less than the balances owed on the loans obtained to purchase the old vehicles. He obtained sufficient financing on the purchase of the new vehicles to pay off the balance owed on the old vehicles over the amount of the trade-in allowance.

Mr. Sada and his wife used the vehicles for commuting and other personal daily activities, but they kept a "for sale" sign on each vehicle from the time of purchase until Mr. Sada traded it in on a new one. Although Mr. Sada's employment with Boggus Ford generally did not involve selling used cars, he negotiated the selling price of the vehicles he traded in. Petitioners reported the purchases and sales of the vehicles as Mr. Sada's

business activity on Schedules C of their 2004, 2005, and 2006 Federal income tax returns.

Mr. Sada owned two 2003 Toyota Sequoias--a desert-colored Sequoia, which he had purchased for $36,171.35 in November 2002 at which time it had an odometer reading of 52 miles (the desert 2003 Sequoia), and another (the second 2003 Sequoia), for which the record does not disclose the date of purchase, purchase price, color, or odometer reading at time of purchase.[3] He also owned a 1998 Isuzu Trooper which he had purchased used for $5,500 to $6,000 in 2003. In 2004 he sold the Trooper in a cash transaction for $7,500, making a profit of $2,000.

On November 18, 2004, Mr. Sada traded in the desert 2003 Sequoia for a gold 2005 Ford Expedition, which he purchased for $38,251.71. He received a $27,500 allowance for the desert 2003 Sequoia and financed the balance of the purchase price. The desert 2003 Sequoia had an odometer reading of 17,435 miles and a

---

[3]Mr. Sada asserts that he owned only one 2003 Toyota Sequoia. In respondent's brief, respondent agrees that petitioners did not own the second 2003 Sequoia. However, motor vehicle purchase orders from Boggus Ford dated Nov. 18, 2004, and July 8, 2005, indicate that: (1) Carlos Sada traded in a 2003 Toyota Sequoia, serial number ending 149129, on the Gold 2005 Ford Expedition that he acknowledges he purchased in 2004 and (2) he traded in a 2003 Toyota Sequoia, serial number ending 150073, on a white 2005 Ford Expedition that he acknowledges he purchased in 2005. Mr. Sada also stipulated that he traded in the second Sequoia on the white 2005 Expedition. Respondent's concession is clearly contrary to the stipulation and to the facts that we have found are established by the record, and we shall disregard it. See Cal-Maine Foods, Inc. v. Commissioner, 93 T.C. 181, 195 (1989).

payoff amount of $28,518 at the time of the trade-in. At the time of the purchase the gold 2005 Expedition had an odometer reading of 11 miles.

Mr. Sada purchased two vehicles in 2005. In July 2005 Mr. Sada traded in the second 2003 Sequoia for a white 2005 Expedition. He purchased the white 2005 Expedition for $37,310.21; he received a $22,000 allowance from the trade-in of the second 2003 Sequoia towards the purchase price and financed the balance. The second 2003 Sequoia had an odometer reading of 25,877 miles and a payoff amount of $25,947.81 at the time of the trade-in. The white 2005 Expedition had an odometer reading of 37 miles at the time of purchase.

In December 2005 Mr. Sada traded in the gold 2005 Expedition on a 2006 gray Expedition. He purchased the gray 2006 Expedition for $37,631.16; he received a $32,000 allowance from the trade-in of the gold 2005 Expedition towards the purchase price and financed the balance. The gold 2005 Expedition had an odometer reading of 10,078 miles and a payoff amount of $33,110 at the time of the trade-in. The gray 2006 Expedition had an odometer reading of 376 miles at the time of purchase and 13,771 miles on April 19, 2007.

Mr. Sada purchased two vehicles in July 2006. He purchased a white 2006 Ford Fusion for $22,428; he paid $500 down and financed the balance. He also traded in the white 2005

Expedition on a black 2006 Ford F-250, which he purchased for $42,205.75. He received a $30,000 allowance from the trade-in of the white 2005 Expedition and financed the balance. At the time of trade-in the white 2005 Expedition had an odometer reading of 9,186 miles and a payoff amount of $33,990.

Petitioners reported income on their 2003, 2004, 2005, and 2006 returns as follows:

|  | 2003 | 2004 | 2005 | 2006 |
| --- | --- | --- | --- | --- |
| Wages, salaries, tips, etc. | $106,324 | $143,027 | $159,594 | $188,737 |
| Interest | 16 | -- | 78 | 56 |
| Business income (Schedule C) | (35,635) | (43,533) | (97,782) | (73,503) |
| Total income | 70,705 | 99,494 | 61,890 | 115,290 |
| Adjustments | (223) | (2,910) | (250) | (3,354) |
| Adjusted gross income | 70,482 | 96,584 | 61,640 | 111,936 |

Petitioners filed an amended return for 2004, reducing their adjusted gross income to $92,675 for a $3,909 overstatement of wages.

Petitioners reported gross receipts, expenses, and net losses on the purchases and sales of the vehicles on Schedules C of their 2003, 2004, 2005, and 2006 Federal income tax returns, as follows:

|  | 2003 | 2004 | 2005 | 2006 |
| --- | --- | --- | --- | --- |
| Income: |  |  |  |  |
| Gross receipts | $1,325 | $3,190 | $4,269 | $9,468 |
| Cost of goods sold | 7,850 | -- | -- | -- |
| Gross profit | (6,525) | 3,190 | 4,269 | 9,468 |
| Expenses: |  |  |  |  |
| Advertising | 1,249 | 150 | -- | -- |
| Car/Truck expenses | 778 | 2,948 | -- | 4,810 |

| | | | | |
|---|---|---|---|---|
| Depreciation | 17,708 | 32,938 | 91,821 | 72,208 |
| Insurance | | -- | 2,880 | -- |
| Legal/professional services | | 1,250 | 1,350 | 500 |
| Office expense | | 186 | -- | -- |
| Rent/equipment | 267 | | | |
| Repairs/maintenance | 250 | 182 | -- | -- |
| Supplies | 113 | | | |
| Meals/entertainment | 5,626 | 7,293 | 4,413 | 1,425 |
| Cell phone | 1,347 | 1,524 | 1,326 | 1,248 |
| Internet | 252 | 252 | 261 | -- |
| Roadrunner | | -- | -- | 580 |
| Computer | 1,520 | -- | -- | 2,200 |
| Total expenses | 29,110 | 46,723 | 102,051 | 82,971 |
| Net profit (loss) | (35,635) | (43,533) | (97,782) | (73,503) |

Mr. Sada did not include the $7,500 he received on the sale of the Isuzu Trooper in the gross receipts for 2004.

Mr. Sada reported the vehicles as 3-year property on Forms 4562, Depreciation and Amortization (Including Information on Listed Property), attached to his joint returns for 2003 through 2006. The depreciation petitioners claimed for 2003 included a special depreciation allowance of $12,750 and general depreciation of $4,958 for property placed in service in 2003. The depreciation petitioners claimed for 2004 included: (1) A special depreciation allowance of $21,250 and general depreciation of $1,771 for property placed in service in 2003 and (2) MACRS depreciation of $9,917 for assets place in service before 2004. The depreciation petitioners claimed for 2005 included: (1) A special depreciation allowance of $39,500 and general depreciation of $5,188 for property placed in service in 2005 and

(2) MACRS[4] depreciation of $45,570 for property placed in service before 2005.  The depreciation petitioners claimed for 2006 included:  (1) A special depreciation allowance of $10,610 and general depreciation of $5,655 for property placed in service in 2006 and (2) MACRS depreciation of $48,166 for property placed in service before 2006.

On their 2004, 2005, and 2006 returns, petitioners claimed the following deductions on Schedule A, Itemized Deductions:

| Schedule A | 2004 | 2005 | 2006 |
|---|---|---|---|
| Medical/dental[1] | -- | -- | $8,688 |
| Taxes | $4,590 | $6,449 | 6,273 |
| Interest | 5,770 | 4,948 | 7,720 |
| Gifts to charity | 5,500 | 4,090 | 3,935 |
| Total deductions | 15,860 | 15,487 | 26,616 |

[1]Total medical expenses ($17,083 for 2006) over 7.5 percent of adjusted gross income ($8,395 for 2006).

In addition to the itemized deductions claimed on Schedules A, petitioners claimed deductions for:  (1) Student loan interest of $2,660 for 2004 and $104 for 2006, (2) educator expenses of $250 each year, (3) tuition and fees of $2,660 for 2004, and (4) domestic production activities of $3,000 for 2006.  Petitioners also claimed child tax credits of $2,000 for 2004 and 2005 and $1,900 for 2006.

---

[4]MACRS refers to the "Modified Accelerated Cost Recovery System".  Generally, MACRS is used to depreciate any tangible property placed in service after 1986.

On February 7, 2008, respondent mailed to petitioners a statutory notice of deficiency for 2004, 2005, and 2006 disallowing their deductions for business expenses claimed on Schedules C and increasing their taxable income by $46,723 for 2004, $102,051 for 2005, and $82,971 for 2006. As a result of the disallowance of the deductions for the business expenses, respondent determined that Mr. Sada was subject to self-employment taxes of $85 for 2004, $114 for 2005, and $254 for 2006 on the gross receipts reported on the Schedules C and was entitled to a deduction each year for one-half of the self-employment tax.

Respondent also disallowed petitioners' itemized deductions claimed on Schedules A for medical expenses of $17,083 claimed for 2006 and charitable contributions of $5,500, $4,090, and $3,935 claimed respectively for 2004, 2005, and 2006. The disallowance of those itemized deductions increased petitioners' taxable income by $5,500 for 2004, $4,621 for 2005, and $13,571 for 2006. The adjustments to petitioners' total income caused the following computational adjustments: (1) The tuition and fees deduction for 2006, the student loan interest deduction for 2006, the child tax credits for 2005 and 2006, and the education credits for 2004 and 2005 were disallowed in full, and (2) the child tax credit for 2004 was reduced to $500. Additionally,

respondent determined that petitioners were not liable for the alternative minimum tax reported for 2006.

## Discussion

### I. Income (Loss) From Activity of Buying and Selling Vehicles

Mr. Sada contends that he purchased the vehicles during the years at issue with the purpose of selling them at a profit and properly reported the activity on Schedules C of his tax returns for the years at issue. He therefore argues that the expenses claimed on the Schedules C are deductible. To the contrary, respondent asserts that Mr. Sada has not established that the expenses were incurred in a trade or business within the meaning of section 162 or for the production of income within the meaning of section 212. Respondent asserts that the expenses are personal expenses, deductions for which are disallowed by section 262.

### A. Claimed Schedule C Expenses

Taxpayers generally may deduct expenses that are ordinary and necessary in carrying on a trade or business. Sec. 162(a). Taxpayers also generally may deduct expenses that are ordinary and necessary for (1) the production or collection of income, or (2) the management, conservation, or maintenance of property held for the production of income. Sec. 212(1) and (2). Further, while business expenses and expenses related to income-producing property are currently deductible, a taxpayer is not entitled to

deduct a capital expenditure (i.e., an amount paid out for new buildings or for permanent improvements or betterments made to increase the value of any property or estate),[5] sec. 263(a)(1), but may be allowed a depreciation deduction if the property is used in a trade or business or is held for the production of income, sec. 167; see INDOPCO, Inc. v. Commissioner, 503 U.S. 79, 83-84 (1992). Personal, living, and family expenses, on the other hand, generally may not be deducted to any extent unless otherwise expressly allowed in the Code (e.g., State and local real property taxes are deductible pursuant to section 164(a)(1)). Sec. 262(a). The prohibitions of section 262 regarding deductibility of personal expenses take precedence over the allowance provisions of sections 162 and 212. Commissioner v. Idaho Power Co., 418 U.S. 1, 17 (1974); Sharon v. Commissioner, 66 T.C. 515, 523 (1976), affd. 591 F.2d 1273 (9th Cir. 1978). As stated by the Supreme Court in Commissioner v. Groetzinger, 480 U.S. 23, 35 (1987):

> not every income-producing and profit-making endeavor constitutes a trade or business. * * * [T]o be engaged in a trade or business, the taxpayer must be involved in the activity with continuity and regularity and * * * the taxpayer's primary purpose for engaging in the activity must be for income or profit. * * *

---

[5]Sec. 1.263(a)-2(a), Income Tax Regs., generally provides: "The cost of acquisition * * * of * * * property having a useful life substantially beyond the taxable year" is a capital expenditure.

In order to be deductible, vehicle expenses must be incurred in the pursuit of a trade or business. Sec. 162(a). Expenses incurred in commuting from a residence to a business or in the course of other personal use are nondeductible personal expenses. Sec. 262; Green v. Commissioner, 59 T.C. 456 (1972). Similarly, automobile depreciation is permitted as a deduction only if, and to the extent that, the automobile is used in the pursuit of a trade or business or for the production of income. Sec. 167(a).

The ownership and maintenance of the property must relate primarily to a business or profit-making endeavor, rather than a personal purpose. Intl. Artists, Ltd. v. Commissioner, 55 T.C. 94, 104 (1970); Chapman v. Commissioner, 48 T.C. 358, 366 (1967). If the acquisition and maintenance of property such as an automobile are primarily profit motivated and personal use is distinctly secondary and incidental, deductions for maintenance expenses and depreciation will be permitted; if acquisition and maintenance are motivated primarily by personal considerations, deductions are disallowed; and if substantial business and personal motives exist, allocation becomes necessary. Intl. Trading Co. v. Commissioner, 275 F.2d 578, 584-587 (7th Cir. 1960), affg. T.C. Memo. 1958-104; Intl. Artists, Ltd. v. Commissioner, supra at 104-105; Deihl v. Commissioner, T.C. Memo. 2005-287; Mann v. Commissioner, T.C. Memo. 1981-684. If allocation is necessary, the deduction for allocable business use

in such cases is computed by reference to the ratio of time or space devoted to business as compared with total use. Intl. Artists, Ltd. v. Commissioner, supra at 105.

Over the years, courts have considered a variety of factors in determining the taxpayer's primary purpose for holding property, including: (1) The taxpayer's purpose in acquiring the property and the duration of his ownership, (2) the purpose for which the property was subsequently held, (3) the taxpayer's everyday business and the relationship of income from the property to total income, (4) the frequency, continuity, and substantiality of the sales, (5) the extent to which the taxpayer used advertising, promotion, or other activities to increase sales, and (6) the time and effort the taxpayer habitually devoted to the sales. United States v. Winthrop, 417 F.2d 905, 910 (5th Cir. 1969); Cottle v. Commissioner, 89 T.C. 467, 487 (1987); Raymond v. Commissioner, T.C. Memo. 2001-96; Neal T. Baker Enters., Inc. v. Commissioner, T.C. Memo. 1998-302; Nadeau v. Commissioner, T.C. Memo. 1996-427; Tollis v. Commissioner, T.C. Memo. 1993-63, affd. without published opinion 46 F.3d 1132 (6th Cir. 1995). Although these factors may aid the finder of fact in determining, on the entire record, the taxpayer's primary purpose for holding property, they have no independent significance and individual comment on each factor is not necessary or required. Cottle v. Commissioner, supra at 487-489;

see also <u>Suburban Realty Co. v. United States</u>, 615 F.2d 171, 177-179 (5th Cir. 1980); <u>Hay v. Commissioner</u>, T.C. Memo. 1992-409.

Mr. Sada asserts that he purchased the vehicles intending to make a profit by selling them at the manufacturer's suggested retail price over his employee bargain purchase price. As an experienced new car salesman, Mr. Sada had reason to know that a new car purchaser most often can negotiate a price that is less than the manufacturer's suggested retail price. Indeed, it is not unusual for new car dealers to advertise a promotional price below the manufacturer's suggested retail price. Moreover, the new vehicles became "used" once Mr. Sada drove them off the car lot. Mr. Sada merely placed "for sale" signs on the vehicles and did not use any other advertising, promotion, or other activities to increase sales. He made no effort toward and devoted no time to the sales other than driving the vehicles for commuting and other personal purposes. Mr. Sada held the vehicles for more than a year, and he and Mrs. Sada used the vehicles solely for personal purposes. He traded in the used vehicles on new ones and did not sell them to end users. The frequency, continuity, and substantiality of the sales are consistent with usual consumer ownership and do not show a profit-making motive.

Although Mr. Sada may have hoped to make profits on the sales of his vehicles, that is not sufficient to convert

inherently personal expenses into deductible business expenses.[6] <u>Sapp v. Commissioner</u>, 36 T.C. 852 (1961), affd. 309 F.2d 143 (5th Cir. 1962); see also <u>Finney v. Commissioner</u>, T.C. Memo. 1980-23 (because the automobile was used 100 percent of the time for personal reasons, any business deductions with respect to that automobile taken on the taxpayers' joint return for the taxable years in issue were properly denied under section 262).

We note that, had we found that Mr. Sada was in the trade or business of selling the vehicles or held them for the production of income, sections 274 and 280F provide further limitations with potential bearing on business-related deductions claimed under section 162 or 167. Pursuant to section 274(d), no deduction or credit is allowed with respect to any listed property, within the meaning of section 280F(d)(4) unless the taxpayer substantiates by adequate records or sufficient evidence corroborating the taxpayer's own statement: (1) The amount of the expense; (2) the time and place of the use of the property; and (3) the business purpose of the expense. Sec. 274(d); <u>Vaksman v. Commissioner</u>,

---

[6]The purchase of a personal vehicle is analogous to the purchase of a residence. Although people who buy residential property generally are interested in making a later profitable sale, the purchase or construction of a personal residence generally is not considered a transaction entered into for profit. "A loss sustained on the sale of residential property purchased or constructed by the taxpayer for use as his personal residence and so used by him up to the time of the sale is not deductible under section 165(a)." Sec. 1.165-9(a), Income Tax Regs.

T.C. Memo. 2001-165, affd. 54 Fed. Appx. 592 (5th Cir. 2002).
Section 280F limits the allowable amount of depreciation for
"listed property" to a multiple equal to the percentage of actual
business use. A.J. Concrete Pumping, Inc. v. Commissioner, T.C.
Memo. 2001-42; sec. 1.280F-2T(i), Temporary Income Tax Regs., 49
Fed. Reg. 42707 (Oct. 24, 1984). Pursuant to section
280F(d)(4)(A)(i) and (ii), passenger automobiles and any other
property used as a means of transportation are "listed property"
subject to the strict substantiation requirements of section
274(d). Cellular telephones are also "listed property" subject
to the strict substantiation requirements of section 274. Mr.
Sada failed to submit any documentation to establish the business
use of his cellular telephone.

Similarly, Mr. Sada has failed to provide any evidence of a
business purpose for all other expenses claimed on Schedules C of
petitioners' income tax returns for the years at issue.
Accordingly, we hold that petitioners are not entitled to deduct
any of the expenses claimed on Schedules C for those years
because Mr. Sada was not in the business of selling cars as a
sole proprietor and did not hold the vehicles for the production
of income.

B. Gross Receipts Reported on Schedules C

Respondent disallowed all the expenses claimed on the
Schedules C but did not make any adjustments to the gross

receipts.  We have held that Mr. Sada was not in the trade or business of selling the vehicles and did not hold the vehicles for the production of income.  Consequently, Mr. Sada did not have Schedule C gross receipts from his purchase and sale of the vehicles.  Therefore, the gross receipts should be eliminated from the computations of petitioners' taxes for the years at issue.

C.  Gain or Loss on Sales of Vehicles

1.  Desert 2003 Sequoia

In the amended answer respondent asserts that petitioners must "recapture" the depreciation on vehicles claimed on Schedule C in 2003 in the year of the sale of the vehicle; i.e., gain on the sale of the vehicles attributable to depreciation deductions they claimed on their 2003 return is taxable as ordinary income in the year of sale.  Respondent has the burden of proving any new matter pleaded in the amended answer.  See Rule 142(a); Canal Corp. v. Commissioner, 135 T.C. ___, ___ (2010) (slip op. at 30).

Respondent was uncertain whether the depreciation claimed on petitioners' 2003 return should be recaptured in 2004, when the desert 2003 Sequoia was traded in, or 2005, when the second 2003 Sequoia was traded in.  Therefore, in the amended answer respondent asserted the full amount of the recapture in each tax year 2004 and 2005.

Motor vehicle purchase orders from Boggus Ford dated November 18, 2004, and July 8, 2005, indicate that: (1) Mr. Sada traded in the desert 2003 Sequoia (serial number ending 149129) on the Gold 2005 Expedition, which he acknowledges he purchased in 2004, and (2) he traded in another 2003 Toyota Sequoia with a different serial number (ending 150073) on the white 2005 Expedition, which he acknowledges he purchased in 2005. However, Mr. Sada denied owning a 2003 Sequoia other than the desert 2003 Sequoia. He testified that the depreciation deduction claimed on the 2003 return was for the desert 2003 Sequoia, and we so find. Respondent's position on brief is that in 2004 Mr. Sada is required to recapture as ordinary income $9,037 of the depreciation deducted in 2003 for the desert 2003 Sequoia and he is not required to recapture any of the depreciation deductions in 2005.

Although Mr. Sada was not in the trade or business of selling the vehicles and did not hold the vehicles for the production of income, petitioners must report on their returns for the years at issue any gains Mr. Sada realized on sales of the vehicles when he traded them in for new ones.

Section 1001 provides that gain from the sale or other disposition of property equals the excess of the amount realized from the sale over the adjusted basis in the property sold.

The amount of gain realized is the excess of the amount realized over the taxpayer's adjusted basis in the property, and the amount of loss realized is the excess of the adjusted basis over the amount realized. Sec. 1001(a). For purposes of computing gain or loss, the "amount realized" is defined by section 1001(b) as the sum of any money received plus the fair market value of the property received. Furthermore, the amount realized generally includes the amount of liabilities from which the transferor is discharged as a result of the sale or disposition. Crane v. Commissioner, 331 U.S. 1 (1947); sec. 1.1001-2(a), Income Tax Regs. While the amount realized by the seller includes the amount of any debt secured by the property that is assumed by the purchaser, settlement charges to the seller used to pay off an existing loan do not increase the amount realized on the sale of property. See Kurata v. Commissioner, T.C. Memo. 1997-252. In such an instance, the seller has paid the debt; there is no cancellation or forgiveness of the indebtedness. Here, Boggus Ford did not assume the outstanding loans on the old vehicles. Mr. Sada effectively paid off the outstanding balances with the trade-in allowances and the new financing for the purchase of the new vehicles. The amount realized by Mr. Sada on the trade-in of the desert 2003 Toyota was the $27,500 trade-in allowance he received.

Generally, the adjusted basis of property equals its original cost, increased by expenditures properly chargeable to capital account, and decreased by the greater of amounts allowed or allowable as depreciation deductions. Secs. 1011, 1012, 1016(a)(1) and (2). Thus, if the taxpayer claimed depreciation deductions and the Internal Revenue Service did not audit the return or otherwise disallow the deductions, the full amounts of depreciation deductions claimed by the taxpayer decrease the basis in the property even if the deductions were not properly allowable. Sec. 1016(a)(2); sec. 1.1016-3(a)(1), (b), Income Tax Regs.

Mr. Sada purchased the desert 2003 Sequoia for $36,171.35 in November 2002. On Form 4562 of his 2003 return he reported that it was placed in service in 2003, and he deducted $17,708 on Schedule C. Petitioners' 2003 return was not audited, and Mr. Sada was allowed a deduction for the depreciation claimed for the desert 2003 Sequoia on the 2003 return. Thus, his basis in the desert 2003 Sequoia was reduced to $18,463.35 ($36,171.35 - $17,708). In 2004 Mr. Sada received a $27,500 trade-in allowance towards the purchase price of the Gold 2005 Expedition. Thus, he realized $9,036.65 of gain on the disposition of the desert 2003 Sequoia in 2004.

Respondent asserts that pursuant to section 1245(a)(1), Mr. Sada is required to recognize the $9,036.65 gain as ordinary income in 2004.

Section 1245(a)(1) provides for the recapture of depreciation as ordinary income upon the disposition of section 1245 property.  As relevant here, section 1245 property includes personal property "which is or has been property of a character subject to the allowance for depreciation provided in section 167".  Section 167(a) provides the following general rule:

> There shall be allowed as a depreciation deduction a reasonable allowance for the exhaustion, wear and tear (including a reasonable allowance for obsolescence)--
>
> (1) of property used in the trade or business, or
>
> (2) of property held for the production of income.

We have held that Mr. Sada did not use the vehicles for which he claimed depreciation, including the desert 2003 Sequoia, in a trade or business or for the production of income. Consequently, the desert 2003 Sequoia is not section 1245 property.

Nonetheless, respondent argues that petitioners must "recognize the recapture income" because they treated the desert 2003 Sequoia as section 1245 property by claiming depreciation deductions for it on their 2003 return and the period of limitations for 2003 has expired, so that respondent cannot adjust petitioners' 2003 return by disallowing the improperly

claimed depreciation for that year. In support of that position respondent cites Herrington v. Commissioner, 854 F.2d 755 (5th Cir. 1988), affg. Glass v. Commissioner, 87 T.C. 1087 (1986), which applies the duty of consistency.

The duty of consistency applies when: (1) The taxpayer made a representation or reported an item for Federal income tax purposes in one year, (2) the Commissioner acquiesced in or relied on that representation or report for that year, and (3) the taxpayer attempts to change that representation or report in a subsequent year, after the period of limitations has expired with respect to the year of the representation or report, and the change is detrimental to the Commissioner. LeFever v. Commissioner, 103 T.C. 525, 543 (1994), affd. 100 F.3d 778 (10th Cir. 1996); see also Herrington v. Commissioner, supra at 758. When these requirements are met, the Commissioner may treat the previous representation by the taxpayer as true, although, in fact, it is not. Herrington v. Commissioner, supra at 758. The duty of consistency is an affirmative defense raised by respondent, and respondent has the burden of showing that it applies. See rule 142(a). Respondent did not raise the duty of consistency as an affirmative defense in the amended answer but merely alluded to it in respondent's opening brief by citing Herrington. Moreover, as discussed below, respondent has not shown that the third requirement has been met and, thus, has not

met his burden of establishing that the duty of consistency applies.

On Form 4562 of petitioners' 2003 return Mr. Sada reported that depreciable property was placed in service in 2003, and he claimed a depreciation deduction of $17,708 on Schedule C. Thus, the first requirement is met.

The Commissioner acquiesces or relies on a representation of the taxpayer when the taxpayer files a return that contains an inadequately disclosed item and the Commissioner accepts that return and allows the period of limitations to expire without an audit of that return. Herrington v. Commissioner, supra at 758. Petitioners' 2003 return was not audited, and Mr. Sada was allowed a deduction for the depreciation claimed for the desert 2003 Sequoia on the 2003 return. Thus, the second requirement is also met.

However, Mr. Sada never took an inconsistent position with respect to his activity of buying and selling the vehicles. Petitioners' 2004 return claimed depreciation for property placed in service before 2003. When respondent audited petitioners' 2004 return, respondent disallowed that depreciation deduction. The 2004 return put respondent on notice that Mr. Sada likely claimed depreciation for that property on his 2003 return. Respondent has not established that the period of limitations for

assessing additional tax for 2003 had expired when the audit of petitioners' 2004 return was completed.

Because respondent did not raise the duty of consistency as an affirmative defense in the amended answer and has not met the burden of establishing that the duty of consistency applies in this case, we hold that Mr. Sada is not subject to the recapture provisions of section 1245. Mr. Sada purchased the desert 2003 Sequoia in November 2002 and disposed of it in November 2004. The gain he realized is taxable in 2004 as long-term capital gain and not as ordinary income. See sec. 1222(3).

### 2. Other Vehicles

The record establishes that the trade-in allowances Mr. Sada received for all of the vehicles was less than the amounts he paid for them. Mr. Sada has not been allowed the depreciation deductions he claimed on the vehicles except for the depreciation deductions he claimed for the desert 2003 Sequoia on petitioners' 2003 return. Consequently, Mr. Sada realized losses on the other vehicles when he traded them in.

Section 165(a) generally allows a deduction for any loss sustained during the taxable year that is not compensated by insurance or otherwise. However, in the case of an individual, section 165(c) limits deductible losses that are not incurred either in a trade or business or a transaction entered into for profit to losses arising from fire, storm, shipwreck, or other

casualty or from theft. A loss sustained on the sale of a vehicle used exclusively for personal use is not deductible pursuant to section 165(c), and petitioners may not deduct Mr. Sada's losses on the vehicles.

## II. Self-Employment Taxes

Respondent determined that Mr. Sada was liable for self-employment tax on the gross receipts he reported on the Schedule C for each year at issue and allowed petitioners a deduction for half of those taxes. We have held that those gross receipts are not included in Mr. Sada's income. Consequently, he is not subject to self-employment taxes on the gross receipts reported on the Schedules C for the years at issue.

## III. Medical Expenses

Respondent disallowed petitioners deduction for medical expenses of $8,688 claimed on Schedule A of their 2006 return. Section 213(a) allows a deduction for expenses paid during the taxable year for medical care that are not compensated for by insurance or otherwise and to the extent that such expenses exceed 7.5 percent of adjusted gross income. For 2006 petitioners reported total medical expenses of $17,083 and adjusted gross income of $111,936. Their adjusted gross income for 2006 is increased by $73,503 to $185,439 for the disallowed net loss claimed on Schedule C for that year. Consequently, if petitioners had substantiated the amount of medical expenses they

paid in 2006, they could have deducted only medical expenses in excess of $13,908.

At trial Mr. Sada produced receipts and statements regarding medical services provided to him and his family during the years at issue. He provided explanations of benefits from Mutual of Omaha for 2004 and most of 2005 and from American Administrative Group for the end of 2005 and all of 2006. The explanations of benefits indicate that the medical insurance was provided through Mrs. Sada's employment. The Mutual of Omaha explanations of benefits show that Mrs. Sada and the rest of the Sada family were also covered by another insurance carrier and show the amount of the claim paid by coinsurance. The explanations of benefits from American Administrative Group did not show the amount paid by coinsurance. Mr. Sada did not provide the Court with the other carrier's explanation of benefits.

Of the two dozen receipts for 2006, all but two were for $45 or less. One receipt was for $269. A receipt dated March 28, 2006, from a surgeon indicates that Mrs. Sada paid a $500 cash deposit for surgery on March 31, 2006. Her insurance company's explanation of benefits shows a claim totaling $8,450 for services provided by that surgeon to Mrs. Sada on March 31, 2006. The explanation states that the claim was being denied because it was filed late. Petitioners did not provide an explanation of

benefits from the coinsurance or a statement of Mrs. Sada's account from the surgeon.

Although Mr. Sada produced the receipt for the cash deposit for the surgery, as well as receipts for smaller amounts that he or Mrs. Sada paid in cash for medical services on other dates, he did not provide a receipt from the surgeon or a canceled check showing that petitioners had in fact paid any or all of the $8,450. He did not provide any evidence of cash withdrawals used to pay the bill, and the bank records Mr. Sada produced did not show any cash withdrawals large enough to pay the bill.

Accordingly, we hold that petitioners have failed to substantiate that they paid medical expenses in excess of 7.5 percent of their adjusted gross income for 2006.

IV. Accuracy-Related Penalties

Initially, the Commissioner has the burden of production with respect to any penalty, addition to tax, or additional amount. Sec. 7491(c). The Commissioner satisfies this burden of production by coming forward with sufficient evidence that indicates it is appropriate to impose the penalty. See Higbee v. Commissioner, 116 T.C. 438, 446 (2001). Once the Commissioner satisfies this burden of production, the taxpayer must persuade the Court that the Commissioner's determination is in error by supplying sufficient evidence of an exception. Id.

Respondent determined an accuracy-related penalty against petitioners under section 6662(a) for each of the years at issue. Section 6662(a) and (b)(1) imposes a penalty in an amount equal to 20 percent of the portion of the underpayment attributable to negligence or disregard of rules or regulations. "Negligence" includes any failure by the taxpayer to make a reasonable attempt to comply with the provisions of the Internal Revenue Code, to keep adequate books and records, or to substantiate items properly. See 6662(c); sec. 1.6662-3(b)(1), Income Tax Regs. The term "disregard" includes any careless, reckless, or intentional disregard. Sec. 6662(c). Disregard of rules or regulations is careless if the taxpayer does not exercise reasonable diligence to determine the correctness of a return position that is contrary to the rule or regulation. Sec. 1.6662-3(b)(2), Income Tax Regs. A taxpayer is not liable for the penalty if he shows that he had reasonable cause for the underpayment and that he acted in good faith. Sec. 6664(c).

Respondent has established that there is an underpayment of tax for each of the years at issue attributable to unsubstantiated itemized deductions claimed on Schedules A and net losses claimed on Schedules C for Mr. Sada's purchases and sales of vehicles that petitioners used solely for personal purposes. Petitioners failed to maintain and produce adequate records to substantiate the deductions they claimed on the

Schedules A and C. The records they produced were incomplete and thus misleading. The law is clear that deductions for vehicles used solely for personal purposes are not allowed. Accordingly, respondent has met the burden of production with respect to the accuracy-related penalty for each year at issue.

Section 6664(c) provides that the section 6662(a) penalty shall not apply to any portion of an underpayment if it is shown that there was reasonable cause for such portion and the taxpayer acted in good faith. Whether a taxpayer acted with reasonable cause and in good faith is determined on a case-by-case basis, taking into account all relevant facts and circumstances, including the taxpayer's experience, knowledge, and education. Sec. 1.6664-4(b)(1), Income Tax Regs. Generally, the most important fact is the taxpayer's effort to assess the proper liability. Id.

Reliance on a tax professional may demonstrate that the taxpayer had reasonable cause and acted in good faith where the taxpayer establishes that: (1) The adviser was a competent professional with sufficient expertise to justify the taxpayer's reliance, (2) the taxpayer provided the adviser with necessary and accurate information, and (3) the taxpayer actually relied in good faith on the adviser's judgment. 3K Inv. Partners v. Commissioner, 133 T.C. 112, 117 (2009); DeCleene v. Commissioner,

115 T.C. 457, 477 (2000); <u>Sklar, Greenstein & Scheer, P.C. v.</u> <u>Commissioner</u>, 113 T.C. 135, 144-145 (1999).

Petitioners have not established that their reliance on their return preparer was reasonable or in good faith. First, petitioners presented no evidence with respect to their return preparer's experience or qualifications. Petitioners' return preparer attended the trial but did not testify. Mr. Sada stated that the return preparer was neither an accountant nor an enrolled agent. Second, petitioners did not establish that they provided necessary and accurate information to the return preparer, particularly regarding the purchases and sales of the vehicles. Petitioners presented no evidence regarding what, if anything, Mr. Sada discussed with the return preparer. Finally, petitioners did not establish that they actually relied in good faith on the return preparer's judgment. Mr. Sada hired him because he "came highly recommended". Mr. Sada initially testified that his return preparer had been recommended to him by "more than a thousand people" but later reduced the number to "a couple dozen people". However, Mr. Sada knew nothing of the preparer's qualifications except that "he has a license to be in business as a tax preparer" and "has prepared thousands of income tax returns for people." Mr. Sada did not investigate whether his return preparer was a certified public accountant. Mr. Sada did not establish that his return preparer was a competent

professional with sufficient expertise to justify his reliance on him.

Petitioners did not seek professional advice from an accountant or an attorney. They have not shown that they acted with reasonable cause or made a good faith effort to properly report their taxes for the years at issue.

Accordingly, we hold that petitioners are liable for the accuracy-related penalties under section 6662(a) for 2004, 2005, and 2006.

We have considered all arguments made, and, to the extent not mentioned, we conclude they are moot, irrelevant or without merit.

To reflect the foregoing, and the concessions of the parties,

<u>Decision will be entered</u>

<u>under Rule 155</u>.